**R. L. SWEET LUMBER COMPANY et al., Plaintiffs,**

v.

**E. L. LANE, INC., et al., Defendants,**

**Grandview Products Company, Inc., et al., Defendants-Appellants,**

**I-70 Investment Limited et al., Defendants-Respondents.**

**No. 58576.**

Supreme Court of Missouri, En Banc.

Sept. 9, 1974.

William E. Simmons, George T. O'Laughlin, P. C., Kansas City, for appellants.

Thomas M. Sullivan, Edward L. Fitzgerald, Downey, Sullivan & Fitzgerald, Galen P. Knowlton, Knowlton & Drape, Kansas City, for respondents.

HOLMAN, Judge.

In this equitable mechanics lien suit the trial court held that the sub-contractor lien claimants were not entitled to a lien for the sole reason that they had failed to give ten days notice to the mortgagees and the title company (which claimed a security interest) before the filing of their lien statement. The lien claimants duly appealed and the Kansas City District of the Court of Appeals adopted an opinion written by Pritchard, P. J., which reversed the judgment and remanded the case with directions. The appeals court, however, transferred the case here because it considered that its opinion conflicted to some extent with cases decided by this court and by the St. Louis District of the Court of Appeals. The case will be determined here "the same as on original appeal," M Const. Art. V, Section 10, V.A.M.S. We reverse and remand.

We are in general agreement with the opinion of the court of appeals and adopt the following portion thereof:

"The single issue presented is whether appellants, who were subcontractors in the construction of an apartment building complex owned by I–70 Investment Limited, must, to enforce their claims for mechanics' liens, give to respondents, First National Bank of Wellston, Johnson County National Bank and Trust Company (mortgagees), and Chicago Title Insurance Company (the disburser of construction funds), the 10 day notice of intention to file mechancis' liens under § 429.100.[1] It is claimed by respondents that they are 'owners' within the meaning of § 429.100 by reason of the definitions in § 429.150: 'Every person, including all cestui que trust, for whose immediate use, enjoyment or benefit any building, erection or im-

---

1. All statutory references are to RSMo 1969, V.A.M.S.

provement shall be made, shall be included by the words "owner or proprietor" therefor under sections 429.010 to 429.340, * * *.' In short, respondents claim that by reason of being named as beneficiaries or mortgagees in certain security agreement instruments executed by the owner, I-70, they are 'cestui que trust' parties under § 429.150. Appellants' basic contention is that respondents are not owners or cestui que trust parties because they, as security holders only, do not have the 'immediate use, enjoyment or benefit' of the property involved as would an ordinary beneficiary or 'cestui que trust' whose interest is vested in a usual living trust instrument, and thus appellants were not required to give the 10 day notice to respondents.

"E. L. Lane, Inc., was the general contractor for the apartment building construction on real estate owned by I-70. Appellants agreed, as subcontractors, with the general contractor to provide labor and materials and other things necessary for certain portions of the construction. Grandview Products was to construct kitchen cabinets, counter-tops, vanity tops, window sills and similar items for a contract amount of $41,641.21, of which there remains unpaid $28,803.55, and the last date that it furnished labor and materials was December 1, 1969. Teague was to install lumber and carpentry materials, set structural steel, install windows, finish hardware, medicine cabinets and building trim for $94,041.00, of which $9,344.14 remains unpaid, and the last date he performed labor was December 15, 1969. Grandview Linoleum was to install linoleum, floor stone, tile, ceramic and vinyl asbestos and similar materials for $19,802.-97, of which $10,846.87 remains unpaid, and the last date it furnished labor and materials was December 11, 1969. Kilbourn was to install carpeting, carpet backing, padding and cement rubber-back carpeting for $16,771.92, of which $11,321.79 remains unpaid, and the last date he performed work was November 28, 1969. Tip Top was to install plumbing, heating, and gas fixtures and materials for $105,288.54, of which $23,348.73 remains unpaid, last performing on December 11, 1969. Ben Cole was to do painting, decorating and wallpapering for $18,893.50, of which $7,509.10 remains unpaid, and the last date he performed labor·was November 20, 1969. Ten days before filing their mechanics' lien statements, each appellant personally served the registered agent of I-70 with notice of intention to file liens. The mechanics' liens were filed on these dates: Grandview Products, March 12, 1970; Teague, April 13, 1970; Grandview Linoleum, March 17, 1970; Kilbourn, March 25, 1970; Tip Top, April 10, 1970; and Ben Cole, March 20, 1970.

"On January 21, 1969 (recorded January 22, 1969), I-70 executed a deed of trust to John R. Bancroft, trustee in favor of First National Bank of Wellston, whereby the payment of a note for $990,000.00 was secured. This instrument contained an assignment of rentals after default. A security agreement (described as Exhibit X), according to a memorandum thereof dated October 18, 1968 and recorded January 28, 1969, ran to Chicago Title Insurance Company securing it against lien claims to the extent funds were advanced by it. On September 5, 1969 (recorded September 7, 1969), I-70 executed a deed of trust to W. A. Larson, Trustee, in favor of The Johnson County National Bank and Trust Company, securing a note for $100,000.00. These instruments were mentioned in appellants' pleadings to establish their liens and for judgments in the amounts claimed in the circuit court. The pretrial order of the court recited that 'the $990,000.00 secured by the deed of trust held by First National Bank of Wellston represents a loan of $150,000.00 for the purchase price of the subject real estate and the balance of $840,000.00 represents a loan to finance the cost of the improvements on the above described real estate. The said deed of trust held by First National Bank of Wellston is therefore a purchase money deed of trust to the extent of $150,000.00 to the liens of all mechanics' lien claimants herein. However, that portion of the deed of trust held by First National Bank of Wellston which

represents a loan for the financing of the cost of improvements, to wit, $840,000.00, is inferior and subject to the liens of all mechanics' lien claimants which are hereafter established and found by the judgment to be valid, subsisting, enforceable mechanics' liens.' It was further ordered that the lien of Johnson County's deed of trust was inferior to that of First National and those mechanics' liens found by the court to be valid. Any lien of Chicago Title Insurance Company was ordered inferior to any mechanics' liens found to be valid by the court.

"It is not controverted that appellants fully performed and that all labor and materials were actually furnished by them and incorporated into the improvements on I-70's real estate; that the lien statements filed contained just and true statements of the accounts; or that the lien statements were in conformity with the statutory requirements for their filings.

"At the request of respondent Cole, and concurred in by all parties, the court appointed a referee, who held hearings, heard arguments and made his report to the court finding and concluding that respondents were owners (cestui que trust) and, under the statutes, were entitled to the 10 day notice, and that failure of each respondent to give the notice invalidated all claims for liens on the subject property. The trial court adopted the findings and conclusions of the referee and entered judgment against all appellants.

■ "The nature of the title conveyed under a deed of trust was well set forth in City of St. Louis v. Koch, 156 S.W.2d 1, 5[3, 4] (MoApp.1941): 'A deed of trust in the nature of a mortgage given on land to secure the payment of a debt is held to be "a lien and nothing more. * * * So viewed, it is neither an estate in land, nor a right to any beneficial interest therein. It is neither jus in re nor jus ad rem. It is merely the right to have the debt, if not otherwise paid, satisfied out of the land. The debt is the essence of the mortgage,

the lien a mere incident that follows it as a shadow (Lipscomb v. Talbott, 243 Mo. 1, 31, 147 S.W. 798)." Missouri R. E. & Loan Co. v. Gibson, 282 Mo. 75, 220 S.W. 675, 676. We must hold, therefore, that appellant's ownership of the deed of trust on the property did not constitute him the owner of the title to the property. He had "a lien and nothing more", which gave him only "the right to have the debt, if not otherwise paid, satisfied out of the land." Missouri R. E. & Loan Co. v. Mary J. Gibson et al., supra. See also Dickerson v. Bridges, 147 Mo. 235, 244, 48 S.W. 825.' The facts of the Koch case were these: Buder was the holder of a note secured by a deed of trust on property located on Natural Bridge Avenue, which was condemned by the City of St. Louis for the widening of the avenue. Judgment for benefits was rendered against the owners Lang revived against them, and execution was sought. Buder had purchased the property at a tax sale prior to the judgment of revivor. The court ruled that the tax sale did not wipe out the judgment lien, but the real thrust of the opinion is that appellant (as a mortgagee) was not an 'owner' of the property, was not a necessary party to the writ of scire facias to revive the judgment and was not entitled to the 20 day notice of the revivor proceedings. In Missouri R. E. & Loan Co. v. Gibson, quoted in Koch, supra, the mortgagee only was made a party defendant in a suit to enforce a lien of special tax bills. The court held that it was insufficient to give the court jurisdiction over the subject matter where no person who had any right, title, interest, or estate in the land, as distinguished from a mere lienor, was a party defendant.

■ "In Ambrose Mfg. Co. v. Gapen, 22 Mo.App. 397, 401 (1886), the court said, 'It has been frequently held in this state that the mortgagor or grantor in a deed of trust was regarded as the owner of the estate until entry for condition broken.' At 57 C.J.S. Mechanics' Liens, § 68, p. 567, it is said, 'A mortgagee is to be deemed an owner, within the meaning of the mechan-

ics' lien statutes, where he is in, but not where he is out of, possession.' See also 57 C.J.S. Mechanics' Liens, §§ 70, p. 569 and § 124, p. 627; and Coleman v. Crescent Insulated Wire & Cable Co., [350 Mo. 781], 168 S.W.2d 1060, 1065 [4, 5] (Mo. 1943): 'But it is settled in Missouri that a grantor in a deed of trust does not convey the title to a trustee, but creates a lien on the land to secure the payment of debt, and that the grantor continues the owner of the land until entry for breach of the condition of the deed of trust.'

"In Black's Law Dictionary, Fourth Ed., 'Cestui que trust' is defined: 'He who has a right to a beneficial interest in and out of an estate the legal title to which is vested in another. 2 Washb.Real Prop. 163. The person who possesses the equitable right to property and *receives the rents, issues, and profits thereof, * * *.*' (Italics added.); and note the distinctions between mortgages and trust deeds (security transactions) and true trusts in Bogert, Trusts and Trustees, 2nd Ed., § 29, p. 235, et seq., and in Restatement of the Law of Trusts, 2nd, § 9, p. 26, et seq. The confusion which has quite apparently existed and grown up as between on the one hand, a trustee and a beneficiary of a true trust, and on the other, as between a grantor in deed of trust (mortgage) and the creditor, may have evolved from the early statutes concerning mortgages. In Sanders v. Kaster, 222 S.W. 133, 134 (Mo.1920), § 2829, RSMo 1909, is quoted: ' "Deeds of trust in the nature of mortgages may, at the option of *cestuis que trust,* their executors or administrators or assigns, be foreclosed by them, and the property sold in the same manner in all respects as in case of mortgages." ' (Italics added.) The present statute, § 443.410, RSMo 1969, V.A.M.S., the successor enactment to the 1909 statute, omits the words 'cestuis que trust' and grants the foreclosure right by trustee's sale, 'at the option of the holder of the debt or obligation thereby secured.'

"No case from other jurisdictions than Missouri have been cited to this court, and none have been found, which, under similar statutes, hold that a mortgagee is entitled to the statutory notice of the intention to file a mechanic's lien. Contrarily, some cases from other states are cited by appellants indicating that a mortgagee is not an 'owner' and thus is not entitled to the notice. One such case is Tompkins v. Horton, 25 N.J.Eq. 284 (1874). * * * See also the annotations, 'Meaning of "Owner" in Real Property Statute' and 'Who is "Owner" of Real Property', 2 ALR 778, 794 (XIII); and 95 ALR 1085, 1095 (XIII); Brace v. Gauger-Korsmo Const. Co., 36 F.2d 661, 664 [8–10] (8th Cir. 1929); Allis-Chalmers Co. v. Central Trust Co., 190 F. 700, 704 (1st Cir. 1911); Wasco Creamery & Const. Co. v. Coffee, [117 Cal.App. 298], 3 P.2d 588, 589 (Cal.App. 1931); and Crawford-Fayram Lumber Co. v. Mann, [203 Iowa 748], 211 N.W. 225, 227 [4–6] (Iowa 1926), for the observation, 'A mechanic's lien arises pursuant to a contract between the mortgagor-owner and the materialman. The mortgagee is not a party to such contract'.

"Under the foregoing cases and authority, especially the Koch case, which sets forth the 'lien theory' of mortgages as the law of this state, it is clear that respondents are not owners or 'cestui que trust, for whose *immediate* use, enjoyment or benefit any building, erection or improvement shall be made,' as the definition is employed in § 429.150. Respondents have merely a security interest by which all they can expect is the possibility *in the future* that the debts of the owner, I–70, will be paid from the proceeds of the sale of the premises if default occurs. Any conveyance by the trustee after sale is also purely conditional upon default in the payment of the debt. Although it is true that the improvements made by appellants enhanced the value of the property and hence the security interests of respondents as lien holders, that fact does not cause them to be beneficiaries of a trust who as equitable owners of the premises would be entitled to receive the 'rents, issues, and profits

thereof.' There could be no *immediate* realization of any benefit conferred by enhanced value or enhanced security interests. The benefit of enhanced value or security interests could not be bestowed until sale of the premises upon condition broken.

"There are other reasons which militate against respondents' claim that they are owners entitled to the 10 day notice of intentions to file liens which may be gleaned from the mechanics' lien statutes. § 429.-010 provides: 'Every mechanic or other person, who shall do or perform any work or labor upon, or furnish any material, * * * erection or improvements upon land, * * * *under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or subcontractor,* upon complying with the provisions of sections 429.010 to 429.340, shall have * * * a lien upon such building, erection or improvements, and upon the land (if in town, city or village) * * * .' (Italics added.) The words of this section contemplate the source for the lien in a contract (Crawford-Fayram, supra) with the owner of the land. 'In a majority of cases a mechanic's lien is sought against an estate in fee simple absolute in the improved land. Such a lien requires the found consent of the owner of this estate, * * * .' 3 Powell on Real Property, Paragraph 486, p. 744. No mortgagee is mentioned in § 429.010 as being a party in interest to the initial contract. Then § 429.050 sets the priority of the lien over prior encumbrances as to buildings, erections and improvements, which, except sidewalks, may be removed by the purchaser after execution sale. § 429.060 sets the priority of the liens as to buildings, etc., or the ground, over subsequent encumbrances. And, importantly, in the subsequent proceedings to enforce the lien and for judgment, § 429.190 requires that the parties to the contract and all other persons interested in the matter in controversy or in the property charged with the lien shall be made parties, 'but such as are not made parties shall not be bound by any such proceedings.' In Farmington Equitable Bldg. & Loan Ass'n v. Miners' Lumber Co., 187 S.W. 555, 556 (Mo.App.1916), citing previous cases, it was held that a mortgagee, not having been made a party to proceedings to enforce a mechanic's lien (i. e. to remove a building on the land), was not affected by the judgment of the lien against the land or the buildings thereon, and the judgment of perpetual injunction against the mechanic's lien holder was affirmed. Then in an equitable action to determine rights of several lienors under § 429.270, a mortgagee has the right to bring the action, and if omitted as a party, he has the right to intervene, and may be brought in as a party under § 429.280. It is thus apparent that the Legislature intended that the rights of a security interest holder be protected by the enactment of these statutes concerning them, and it is impossible to ascertain any prejudice to their rights by reason of a lack of the 10 day notice prior to the filing of liens.

■ "The purpose of the 10 day notice of intention to file mechanics' liens under § 429.100 is to warn the *owner* of the property against paying the original contractor while outstanding claims exist in favor of laborers and materialmen; and to give him the opportunity to discharge the debt before the lien is filed. The notice is for the benefit of the *owner* alone. Reese v. Cibulka, 68 S.W.2d 902, 904 (Mo.App. 1934); Harry Cooper Supply Co. v. Gillioz, 107 S.W.2d 798, 804[12] (Mo.App. 1937). It is the *owner* who has the obligation to pay the debt and prevent the lien from being perfected. In the ordinary situation a mortgage-security holder would have no such obligation.

■ "It is apparent from the foregoing that a mortgagee-security holder is not a beneficiary of a trust who has the *immediate* use, enjoyment or benefit of any building, erection or improvement upon lands, and thus is not entitled to the 10 day notice. If respondents' contention to the contrary were sustained, it would thwart the

well established rule in this state that, '* * * our mechanic's lien law is remedial in nature, Hicks v. Scofield, 121 Mo. 381, 25 S.W. 755; that its purpose is to give security to mechanics and materialmen for labor and materials furnished in improving the owner's property, Vasquez v. Village Center, Inc., Mo., 362 S.W.2d 588; and that the law should be construed as favorable to those persons as its terms will permit, Midwest Engineering & Construction Co. v. Campagna, Mo., 421 S.W. 2d 299 [229].' Kinnear Manufacturing Company v. Myers, 452 S.W.2d 599, 602[1, 2] (Mo.App.1970)."

Respondents rely upon two cases which by analogy announce a rule concerning the status of a mortgagee-security holder as an owner or proprietor which tend to support the trial court's judgment. The first is H. B. Deal Construction Co. v. Labor Discount Center, Inc., 418 S.W.2d 940, 956[14] (Mo.1967), where it was said, "The first lien statement was defective in that it failed to include the cestui que trust as owner as required by § 429.150 * * *." It was held that a later amendment of the lien statement naming the record title holder *and* the cestui que trust properly cured the omission. The second case is Nelle Plumbing Company v. Stefanic et al., 453 S.W.2d 636, 641[13] (Mo. App.1970), which, relying on H. B. Deal, says, "It is readily apparent that a cestui que trust would benefit from the erection of a building on land against which it has a deed of trust and shall be considered an owner or proprietor under the mechanic's lien statute. As such, the cestui que trust must be named in the lien statement." We also note that the St. Louis District of the Court of Appeals recently decided a case in which it followed H. B. Deal and Nelle Plumbing in holding that a lien claimant was not entitled to a lien because he failed to include the beneficiary of the deed of trust in the notice of lien or lien statement. See, Boyer Lumber, Inc. v. Blair et al., Mo.App., 510 S.W.2d 738.

Since Nelle Plumbing and Boyer relied on H. B. Deal it is apparent that the latter case is the primary basis for the interpretation of Section 429.150 relied on by respondents and adopted by the trial court. In considering the soundness of H. B. Deal we should bear in mind that the question did not arise in that case in the same posture as here. H. B. Deal does not contain a thorough analysis of Section 429.150 and its relationship to the other mechanic's lien sections such as that heretofore set out. In Deal we simply assumed that the phrase "cestui que trust" in Section 429.150 included the beneficiary of the deed of trust in connection with our holding that the suit was timely filed.

It follows from the foregoing that to the extent that the H. B. Deal, Nelle Plumbing and Boyer cases conflict with our holding herein they should no longer be followed.

Respondents have also cited the cases of Brown Supply Company v. J. C. Penney Company, 505 S.W.2d 463 (Mo.App.1974), Kinnear Manufacturing Company v. Myers, 452 S.W.2d 599 (Mo.App.1970), and Packard v. Sugarman, 31 Misc. 623, 66 N.Y.S. 30 (1900), but those cases do not support their contentions. In Brown there is simply a recital that the claimant served the 10 day notice on the deed of trust holders. Kinnear is apparently cited because it contains the statement that the policy of liberal construction does not relieve a lien claimant from substantially complying with the lien statutes. In Packard a claimant was denied a lien because he failed to serve notice upon the owner of the real estate who had contracted to sell it to another.

For the reasons heretofore stated the judgment is reversed and the cause remanded with directions to enter judgments for appellants (lien claimants) in accordance with the views herein expressed.

All concur.