AMERICAN BUILDINGS COMPANY, a Delaware Corporation, Appellant (Plaintiff below),

v.

WHEELERS STORES, a Division of Peavey Delaware Limited, a Delaware Corporation, and Peavey Company of Minneapolis, Minnesota, a Minnesota Corporation, and Industrial Building Company, a Wyoming Corporation, Appellees (Defendants below).

No. 4935.

Supreme Court of Wyoming.

Oct. 30, 1978.

Donald E. Jones and Gay Bartels, Torrington, for appellant.

Michael E. Warren of Sawyer & Warren, Torrington, for appellees.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

From a judgment of the district court in favor of defendant-appellee Wheelers Stores (hereinafter Wheelers) denying

plaintiff-appellant American Buildings Company (hereinafter ABC) a contractor's lien and its foreclosure against Wheelers' property, this appeal is taken.[1] The issues, as stated by ABC, are:

"1. Is the Mechanic's Lien Law of the State of Wyoming applicable and does it afford protection to a manufacturer of prefabricated buildings sold by local dealers who contract directly with the owner to furnish buildings for erection on owner's property, and

"2. Were the elements of estoppel present in this case to deny the appellant of its right to enforce the lien." [2]

We would state the issues more precisely:

1. Does a manufacturer of a prefabricated building, as a vendor, have a lien within the contemplation of § 29–2–102, W.S.1977,[3] when its vendee-dealer sells the building direct to the owner of real property under a contract to supply only the prefabricated parts to be assembled and erected by the owner?

2. Under the facts of this case, is ABC estopped from enforcing, or has it waived, any lien it may have?

We shall affirm.

Wheelers is a retail sales company operating sixty-four stores at the time of trial. ABC manufactures prefabricated steel buildings for commercial use. Industrial Building Company, Casper, Wyoming (hereinafter Industrial), was the Wyoming dealer for ABC. In 1974, ABC's regional sales manager met with representatives of Wheelers to negotiate the sale and purchase over a period of time of several prefabricated buildings. It was determined that when a purchase was made, ABC would sell the building to one of its dealers. The dealer would then, in turn, sell the building to Wheelers. Over a period of time, as a result of that meeting, Wheelers bought five ABC buildings in that fashion. In each of the five transactions, Wheelers was instructed to pay the dealer directly. ABC's relationship with its dealers is "vendor-buyer," i. e., title to buildings passes to the dealer. The dealer is an "independent businessman" who markets as he sees fit. ABC does not sell directly to an owner or customer.

In accordance with those arrangements, Wheelers ordered a building from Industrial for a store at Torrington at a cost of $29,254.78. ABC sold the prefabricated components to Industrial. Industrial arranged delivery to Wheelers. Wheelers erected the structure and Wheelers paid $2,925.48 on account to Industrial. After the building was assembled on site by Wheelers, Industrial billed the purchaser for the $26,329.30 balance. Wheelers, relying upon the directions of ABC, paid Industrial in full. Industrial did not pay ABC its price for the structure. ABC credited Industrial with $6,100.84, thereupon filed and noticed a lien for $23,153.94, and initiated this action to foreclose.

1. Industrial Building Company is not a party to this appeal. Default judgment was taken by plaintiff against it prior to the trial of this case. Peavey Delaware and Peavey Company are the corporate parents of Wheelers.

2. Wheelers frame the issues somewhat differently:

"1. Is the Mechanics' Lien Law of the State of Wyoming applicable?

"2. If the Mechanics' Lien Law is applicable, is American estopped from using the law?

"3. If the Mechanics' Lien Law is applicable, has American waived any rights it might have had?

"4. Was the service of the notice of lien on Wheelers sufficient?"

3. Section 29–2–102, in pertinent part:

"Every mechanic or other person, who shall do or perform any work or labor upon, or furnish any material * * * for any building, erection or improvement upon land, * * under or by virtue of any contract with the owner or proprietor thereof, or his or her agent, * * * contractor, or subcontractor, * * * shall have for his work, or labor done, or materials * * * furnished, a lien upon such building * * * and upon the land belonging to such owner or proprietor on which the same are situated, to the extent of one (1) acre, * * * to secure the payment for such work or labor done, or materials * * * furnished."

The trial judge found that ABC, under the facts of the case, did not come within the ambit of § 29–2–102, and further was estopped from claiming a lien. ABC urges that Industrial was an original contractor of Wheelers, and hence ABC is a material-man—a "person"—furnishing "material" "by virtue of any contract with the owner", "or his contractor" and should have a lien to secure payment for materials furnished. In other words, the claim of ABC is that Industrial is a "contractor" of the owner within the statute; so, therefore, ABC, in furnishing materials to Industrial, became entitled to a lien.

■ This court has decided some applicable fundamentals which pertain to the lien laws of this state. Mechanics' liens were not recognized at and are in derogation of common law so there must be full compliance with legislative requirements. *Arch Sellery, Inc. v. Simpson*, Wyo.1959, 346 P.2d 1068. Statutory lien laws must be strictly construed and their scope cannot be extended. *Cities Service Oil Company v. Pubco Petroleum Corporation*, Wyo.1972, 497 P.2d 1368.

■ There are also some well-settled definitions applicable to the section we have under consideration. Loosely speaking, one who enters into a contract with another to do or supply a service or goods is a "contractor". However, when a contract concerns the construction of improvements to real property, "contractor" has a specialized meaning related to the building trades; and it is in this sense that "contractor" is connected to the law of mechanics' liens, as is a "subcontractor" and one who supplied materials. The latter has come to be known as a "materialman". Statutory terms must be construed in connection with the subject matter with which they are used. *Morri-*

*son-Knudson Co. v. State Board of Equalization*, 1943, 58 Wyo. 500, 135 P.2d 927.

Stripping the Wyoming statute to its essentials applicable to this case, bares its intent: "Every * * * person * * * who shall * * * furnish any material under * * * any contract with the owner * * * or his * * * agent, trustee, contractor or subcontractor * * * shall have a lien * * *." Note that "owner", "agent", "trustee", "contractor", and "subcontractor" are in the alternative. The word "contractor" is amplified by § 29–2–109, W.S.1977, when it sets out the lien filing procedure:

> "It shall be the duty of every *original contractor*, within four (4) months, and every subcontractor, and every journeyman and day laborer, and every other person seeking to obtain the benefits of the provisions of this act [§§ 29–2–101 to 29–2–124], within ninety (90) days after the indebtedness shall have accrued, to file * * *." (Emphasis added.)

We consider the addition of the word "original" to be only for the purposes of distinguishing a "contractor" from a "subcontractor". Industrial furnished *material* to the owner, Wheelers, under a contract. ABC had no contract with Wheelers.

■ The authority is overwhelming that one who merely furnishes materials to the owner or a contractor is a materialman, and not a contractor or subcontractor, within the meaning of the mechanics' lien laws. Anno., short-titled "Mechanic's Lien—Who Is Materialman," 141 A.L.R. 321. See also, A.L.R. Bluebooks of Later Decisions.[4] As concluded by the same annotation, one who not only furnishes materials, but installs them, is a contractor or a subcontractor, and not a materialman, within the meaning of mechanics' lien laws.[5] In building contracts, a "subcontractor" is one who as-

4. For some case citations, see: *Leonard B. Hebert, Jr. & Co., Inc. v. Kinler*, La.App.1976, 336 So.2d 922, 924; *Rebisso, Inc. v. Frick*, 1952, 94 Ohio App. 45, 108 N.E.2d 282, citing *Matzinger v. Harvard Lumber Co.*, 1926, 115 Ohio St. 555, 155 N.E. 131; *Drake Lumber Co. v. Lindquist*, 1946, 179 Or. 402, 170 P.2d 712, 719; *Hillsdale Gravel Co. v. Dennehy Construction Co.*, Tex.

Civ.App.1945, 185 S.W.2d 583; *Pugh v. Moxley*, 1912, 164 Cal. 374, 128 P. 1037, 1039.

5. For some case citations, see: *Stewart v. Cunningham*, 1976, 219 Kan. 374, 548 P.2d 740; *Drake Lumber Co. v. Lindquist*, supra; *Stephens Lumber Co. v. Townsend-Stark Corporation*, 1924, 228 Mich. 182, 199 N.W. 706; *Curlett v. Aaron*, Del.1883, 6 Houst. 477.

sumes performance of a portion or all of the contract work which the contractor has obligated himself to perform under contract with the owner. *Wells-Stewart Construction Co. v. Martin Marrietta Corporation*, 1968, 103 Ariz. 375, 442 P.2d 119; *Kinney Electrical Manufacturing Company v. Modern Electric Company*, N.D.1967, 149 N.W.2d 69; *O'Neal Steel Company v. Leon C. Miles, Inc.*, Miss.1966, 187 So.2d 19; *Rogers v. Crane Co.*, 1937, 180 Okl. 139, 68 P.2d 520, 524; 17 C.J.S. Contracts § 11, p. 588. We must conclude that Industrial is merely a materialman [6] and not a contractor.

■ Applying the principle that the lien law of Wyoming will not be extended beyond its terms, there then arises the question as to whether a materialman (ABC) to a materialman (Industrial) can come within its terms. We conclude from our research that vast authority supports the conclusion that a materialman supplying a materialman is too remote a relationship not within the sphere of statutory protection affording a lien to suppliers of materials. It is not a new concept. A detailed review of cases illustrating the rule is clarifying. In *Caulfield v. Polk*, 1897, 17 Ind. App. 429, 46 N.E. 932, a singularly similar set of circumstances to those now before us converged. In that case, Eagle Machine Works agreed to sell and furnish an engine and boiler to defendant for defendant's canning factory. The plaintiff-manufacturer agreed to furnish Eagle a steam boiler to be used in fulfilling Eagle's contract with the defendant. The boiler was received by Eagle and thence shipped to defendant, along with the engine. As in the instant case, the defendant did its own installation. The defendant timely settled its debt with Eagle but Eagle failed to pay plaintiff-manufacturer. The manufacturer claimed a lien under the Indiana statute.[7] The manufacturer argued identically, as does the manufacturer ABC, that Eagle was a contractor within the statute. The court in *Caulfield* explained:

"The statute gave the machine works the right to a lien, not as a contractor, but as a material man. The distinction between the two must be kept in view if property owners are to have proper protection. If one material man furnishing material to another material man has a right to a lien, then any material man, no matter how far removed, has the same right, and all he has to do is to show that he furnished the material to be used in that particular building, and it was so used. A material man should be and is protected for any machinery furnished to a person authorized to put the same in a building, whether such person be the owner or a contractor or subcontractor. Beyond this the statute does not go in terms, and should not go by implication. In the case at bar, appellant [plaintiff] did not furnish the boiler to appellee [defendant], nor to any one authorized to place it in appellee's factory, nor to any one authorized, either expressly or by im-

6. ABC, according to its lien statement, makes its claim as one furnishing materials and nowhere claims Industrial to be a contractor or subcontractor. Its follow-up complaint to foreclose its claimed lien alleges that Industrial was "a contractor performing certain construction work on improvements on the above described land [of Wheelers], contracted with plaintiff to furnish materials in connection with said construction and improvements." The evidence was that Industrial only delivered the building but had nothing to do with erection or installation on Wheelers' real property, the latter having made other arrangements for assembly and construction on its property.

7. The Indiana Act, § 7255, Burns' Rev.St. 1894, provides:

"That contractors, sub-contractors, mechanics, journeymen, laborers and all persons performing labor or furnishing material or machinery for erecting, altering, repairing or removing any house, mill, manufactory or other building, bridge, reservoir, system of water-works, or other structure, may have a lien separately or jointly upon the house, mill, manufactory or other building, bridge, reservoir, system of water-works, or other structure which they may have erected, altered, repaired or removed, or for which they may have furnished material or machinery of any description and on the interests of the owner of the lot or land on which it stands, or with which it is connected, to the extent of the value of any labor done, or material or machinery furnished, or both."

plication, by appellee to purchase it. The statute makes no provision for a lien in favor of one who simply sells materials to another who is himself but a material man." (Bracketed words supplied.)

It is interesting to note that the Wyoming statute, supra, footnote 3, includes "engines, boilers or machinery."

Under the lien law of Louisiana, any person furnishing material "to or for a contractor or subcontractor" has a lien. A court of that state held that the material must have been furnished directly to one or the other, contractor of subcontractor, and one who supplied materials to the materialman of a contractor or subcontractor had no lien. *Refractory Construction, Inc. v. Cities Service Oil Co.*, La.App.1973, 278 So.2d 510. The law of that state, in the part set out as indicated, does not protect the supplier of a materialman.[8] Interpreting a law of New York granting a lien to "a person performing labor for or furnishing materials to a contractor, his subcontractor or legal representative," the court in *Kingston Trust Company v. State*, 1968, 57 Misc.2d 55, 291 N.Y.S.2d 208, held that when the prime contractor purchased from a materialman, who in turn purchased materials from another, the first seller is not entitled to a lien because the relationship is too remote under the language of the statute. Then, in *Phillips & Edwards Electric Corporation v. Shintaffer*, 1956, 143 Cal.App.2d 561, 299 P.2d 912, the Universal Corporation agreed with the owner to furnish all elevating and conveying equipment for a rice drying plant. The installation required certain electrical equipment, including a control panel which Universal acquired from the lien claimant. The court held that the materialman of a materialman is not entitled to a lien under the statute.

Even though the supplier of construction materials cut lumber to dimensions for a construction project, a supplier of supplies holding no subcontract under a contractor was not a subcontractor under the statute. *Georgia-Pacific Corporation v. Dan Austin Properties, Inc.*, 1972, 126 Ga.App. 191, 190 S.E.2d 131, aff'd. 229 Ga. 803, 194 S.E.2d 472. Under the Georgia statute, a lien is only to materialmen who may have supplied materials directly to the owner of realty or to a contractor or subcontractor making the improvement. See also, *Associated Distributors, Inc. v. De La Torre*, 1976, 138 Ga. App. 71, 225 S.E.2d 462.

Another case similar to that now before us is *Ronald A. Coco, Inc. v. St. Paul's Methodist Church of Las Cruces, New Mexico, Inc.*, 1967, 78 N.M. 97, 428 P.2d 636. Coco sought to foreclose a materialman's lien. St. Paul's had engaged one Borrett to build a church. Borrett had ordered, from Wood Products, prefabricated wood beams manufactured by Coco. The beams were billed to Wood Products by Coco. Wood Products was paid, but Coco was not. The New Mexico court discussed how it could find for the church through the principles of agency. The court reasoned that an agent, having possession of commodities for sale, has implied authority to receive payment for them and the principal is estopped where he clothes the agent with apparent authority which the principal knowingly permits the agent to assume or which he holds out the agent to possess. However, the court did not apply the agency concept but went on to hold that Wood Products was a supplier (a materialman); and the statute makes no provision for liens on behalf of those from whom it purchased its products. See also, *Botzum Bros. Co. v. Brown Lumber Co.*, 1957, 104 Ohio App. 507, 150 N.E.2d 485; *Dupree v. Gaubert Industries, Inc.*, 5th Cir. 1968, 403 F.2d 207; *Monroe Banking & Trust Company v. Allen*, USDC ND Miss. ED 1968, 286 F.Supp. 201,

---

8.  See also, *Leonard B. Hebert, Jr. and Co., Inc. v. Kinler*, supra, where general contractor subcontracted structural steel work, the subcontractor to furnish, fabricate and erect the steel. The subcontractor in turn contracted to obtain prefabricated steel from Steel-Tek who obtained its materials from several suppliers, including Capitol, the lien claimant. The court held that Steel-Tek was not a subcontractor because it did no work on the job site. It was considered a materialman and materialmen who furnish material to a materialman have no lien. *J. Watts Kearny & Sons v. Perry*, 1932, 174 La. 411, 141 So. 13, holds the same.

and 57 C.J.S. Mechanics' Liens § 103, all to the same effect.[9]

We are satisfied that the situation at hand is identical to that of all the foregoing cases. Here, the only one having a contract with the owner, Wheelers, was Industrial. There was here no agent, trustee, contractor, or subcontractor acting as an intermediary of the owner. ABC parted with title to the building upon sale to Industrial and is only the supplier of the supplier. Wheelers obtained materials for the building from one source and labor for its erection from yet another or others having no relationship to either Industrial or ABC.

ABC relies on *Jordan v. Natrona Lumber Company*, 1938, 52 Wyo. 393, 75 P.2d 378. We fail to see the application of Jordan. The law coming out of that case was wrapped in an entirely different kind of factual package. In that case the owner-landlord of a building entered into an agreement with his lessee whereby the lessee was to make extensive repairs and improvements to an old brewery building which had lain idle for fourteen years during the era of prohibition. The lessee found itself financially unable to do the restoration but entered into an agreement with its manager and agent whereby the latter, in exchange for capital stock of the lessee, would undertake the work. He went to a lumber company for building materials which were furnished for the improvements completed. The lessee shortly thereafter defaulted on its lease and went out of business. The lumber company regularly pursued its claim of lien and asserted it against the owner-lessor of the building. The ultimate holding of this court was simply that improvements beneficial to the lessor's reversionary interest entitled the supplier of materials to a lien and the tenant had become the agent of the landlord by virtue of their agreement. There is no similarity to the case before us and does not aid ABC's attempt to extend the lien statute to the manufacturer of materials furnished to the materialman, here Industrial, who is the party holding a position like that of the lumber company in Jordan. There is no question but that Industrial had the right to a lien as the supplier. However, Industrial was paid. In order for us to apply Jordan, we must somehow find Industrial to be the agent of Wheelers. That we cannot do in the absence of facts establishing that relationship. Somewhere the application of the lien statute must stop in the chain of material supply. Would it also extend to the suppliers of unfabricated materials to ABC such as bar steel, metal sheets, bolts and nuts, or to ABC's laborers employed to shape and prefabricate parts? The asking of the question supplies the negative answer on the grounds of practicality and restrictive statutory language.

We therefore hold that Industrial was merely a materialman, not a contractor, and that ABC was only a materialman to a materialman and beyond the scope of protection of § 29–2–102, W.S.1977.

In that ABC was not entitled to a lien in the first instance, it is unnecessary for us to consider whether the lien claim was waived or whether ABC was estopped from claiming any lien it might have, nor is it necessary that we consider the issue raised by Wheelers that ABC's notice of lien was insufficient.

Affirmed.

---

**9.** The case before us is not the same type as that covered by *Ranch House Supply Corporation v. Van Slyke*, 1962, 91 Ariz. 177, 370 P.2d 661, where the manufacturer of prefabricated buildings sells to a dealer, also a licensed contractor, engaged in erecting them. The Arizona court held a lien in the manufacturer as that of a materialman supplying a contractor.