WEYERHAEUSER COMPANY, a corporation, successor to Union Manufacturing and Supply Company, Inc., Appellant (Plaintiff),

v.

Henry B. WALTERS and Reva B. Walters, husband and wife; Guaranty Federal Savings & Loan Association; Ron Kuhn, d/b/a Ron's Plumbing and Heating; Aspen Electric, Incorporated, a Wyoming corporation; and William C. Burt, Appellees (Defendants).

WEYERHAEUSER COMPANY, a corporation, successor to Union Manufacturing and Supply Company, Inc., Appellant (Plaintiff),

v.

Gordon A. VALASEK and Beverly Marrie Valasek, husband and wife; the Richard Gill Company; MGIC Mortgage Marketing Corporation; M & I Marshall and Ilsley Bank; Ron Kuhn, d/b/a Ron's Plumbing and Heating; Aspen Electric, Inc., a Wyoming Corporation; MacKenzie Cabinet Company of Wyoming, Inc.; and Pozzi Window Company, Appellees (Defendants).

Nos. 84-41, 84-42.

Supreme Court of Wyoming.

Oct. 15, 1985.

Kenneth R. Marken, Casper, for appellant.

Dennis M. Hand and James A. Hardee of Hand, Hand & Hand, P.C., Casper, for appellees Walters, Guar. Federal Sav. & Loan Ass'n, Valaseks, The Richard Gill Co., MGIC Mortg. Marketing Corp., M & I Marshall and Ilsley Bank.

Before THOMAS, C.J., and ROONEY, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

This appeal raises questions concerning Wyoming's construction lien statutes, §§ 29–1–201 through 29–2–109, W.S.1977 (June 1981 Replacement). The appeal concerns two lawsuits initiated by Union Manufacturing and Supply Company, Inc. (Union), a dissolved subsidiary of appellant Weyerhaeuser Company, to enforce construction liens on certain real property and associated improvements. The district court concluded that our statutes required Union, as a supplier of building materials under a contract with the property owner, to perfect its liens within the 90-day period allotted to materialmen rather than within the 120-day period prescribed for contractors. Since Union had filed its lien statements after the expiration of the filing time for materialmen, the court entered summary judgments against appellant.

We will affirm.

The material facts in this case are undisputed. Before its dissolution in December, 1982, Union was wholly owned by appellant Weyerhaeuser, and authorized to transact business in Wyoming. In each of the two cases involved in this appeal, Union entered into a contract with Baird Homes, Inc. (Baird), the record owner of real property in Natrona County, Wyoming, to furnish lumber and other materials for Baird's construction of a new home on such property. Union acted as a supplier only, installing no materials into the new homes. On October 12, 1982, Union supplied the last materials to one homesite which, that same day, Baird conveyed by warranty deed to appellees Gordon and Beverly Valasek. Union furnished the last materials on October 27, 1982, to the second homesite, and Baird conveyed the property two days later by warranty deed to appellees Henry and Reva Walters.

Baird failed to pay for any of the materials furnished by Union. On December 22, 1982, Union notified Baird, by certified mail, of its intent to file a lien on the Valasek property. Union sent Baird a similar notice with respect to the Walters property on December 30, 1982. No notice of intent to file a lien was given to either the Walters or the Valaseks, the record owners of the properties at the times of notification.

Union filed its lien statement concerning the Walters property with the county clerk on January 27, 1983, 92 days after furnishing the last materials to the property. The lien statement describing the Valasek property was filed February 8, 1983, 119 days after Union supplied the last materials.

Union initiated separate actions to enforce the liens in July, 1983, naming as defendants the Valaseks in one case and the Walters in the other case, their respective mortgagees, and other lien claimants of record. The district court subsequently granted, in each case, Union's motion to substitute as the real plaintiff in interest, appellant Weyerhaeuser Company, the successor corporation to Union.

Appellees, the property owners and mortgagees, moved the district court for summary judgments based on Union's failure to timely file its lien statements and failure to notify the owners of its intent to file liens. Following a hearing, the court found as a matter of law that Union had acted as a materialman in performing its contracts with Baird. The court, therefore, entered summary judgments against appellant on the ground that Union had not filed its lien statements with the county clerk within the 90-day period prescribed for materialmen by statute. Section 29–2–106, infra. Weyerhaeuser's appeals from these judgments have been consolidated to expedite review.

Appellant Weyerhaeuser Company raises a single issue for our consideration:

"Whether, under the present construction lien statutes of Wyoming, W.S. § 29–1–201 (1981) et seq., the Appellant is a 'contractor', entitled to one hundred twenty (120) days in which to file its lien statement, where the Appellant furnished building materials only to certain real property pursuant to a contract with the then owner of such property, who incorporated such materials into permanent changes therein?"

Appellees, the Walters, Valaseks, and mortgagees, restate the issue raised by appellant and present three alternative grounds for affirming the summary judgment:

"A. DID APPELLANT FILE ITS LIEN STATEMENTS WITHIN THE TIME LIMITED BY STATUTE?

"1. Was Appellant a 'contractor' entitled to one hundred twenty (120) days or a 'materialman' entitled to ninety (90) days within which to file its lien statements.

"B. CAN SUMMARY JUDGMENT OF THE DISTRICT COURT BE AFFIRMED ON ANY OTHER LEGAL GROUND APPEARING IN THE RECORD?

"1. Did Appellant give adequate pre-lien notice?

"2. Was Appellant's pre-lien notice also defective because it did not state from whom the claim was due?

"3. Are Appellant's liens invalid because they were filed in the name of a nonexistent company and suit to foreclose was brought in the name of a nonexistent company?"

## I

It is necessary for the disposition of this case to determine whether appellant was a contractor or a materialman. Several sections of our lien law have application. Any person who contributes to the permanent improvement of real property in this state is entitled to a lien upon that improvement and upon the land.[1] To enforce his lien, a claimant must perfect it by timely filing an appropriate statement with the county clerk.[2] Section 29–2–106(a) prescribes a longer filing period for a "contractor" than for "every other person" seeking to perfect a lien:

"(a) Every contractor shall file his lien statement within one hundred twenty (120) days and every other person shall file within ninety (90) days:

"(i) After the last day when work was performed or materials furnished under contract; or

"(ii) From the date the work was substantially completed or substantial completion of the contract to furnish materials, whichever is earlier; or

"(iii) With respect to an employee or subcontractor, after the last day he performed work at the direction of his employer or contractor."

Section 29–1–201(a) defines "contractor" and related terms:

"(a) Except as otherwise provided, as used in this title:

"(i) 'Contractor' means:

"(A) A person employed by and contracting with an owner to improve an owner's property * * *.

"          *          *          *          *          *          *

"(iii) 'Improve or improvement' means:

"          *          *          *          *          *          *

"(B) Any work performed or material furnished for the permanent change of any real property; * * *

"          *          *          *          *          *          *

"(v) 'Owner' as used in this act means:

"(c) Notwithstanding subsection (a) of this section if the land subject to a lien is located in any city, town or subdivision the lien shall extend to the entire lot upon which the building or improvement is located."

---

1. Section 29–2–101, W.S.1977 (June 1981 Replacement), provides:

"(a) Every person performing any work on or furnishing any materials or plans for any building or any improvement upon land shall have for his work done or plans or materials furnished a lien upon the building or improvements, and upon the land of the owner on which they are situated to the extent of one (1) acre. If the improvements cover more than one (1) acre the lien shall extend to all the additional land covered thereby.

"(b) To have a lien the work or materials shall be furnished under a contract.

2. Section 29–1–301(a), W.S.1977 (June 1981 Replacement), requires:

"(a) In order to have a perfected lien pursuant to this title, a lien claimant shall file with the county clerk a lien statement sworn to before a notary public. The county clerk shall file the statement and index by date, name of claimant and property owner, and legal description."

"(A) With respect to construction liens: any person with a legal or equitable interest in the property to be changed, altered or improved, for whose use or benefit any improvement shall be made or any materials furnished * * *."

One who improves real property but does not satisfy the definition of a contractor is a subcontractor or materialman under § 29–1–201(a)(vi):

"(vi) 'Subcontractor' or 'materialman' means a person other than a contractor performing work or furnishing materials to an owner or a contractor under contract * * *."

Appellant contends that a lien claimant who furnishes materials to the owner of the property being improved, pursuant to a contract, is a contractor and entitled to 120 days from the last date of delivery of materials in which to file a lien.

Appellant fashions its own definition of contractor as a "person employed by and contracting with an owner to improve an owner's property, by *performing work or furnishing materials.*" Appellant, in effect, paraphrases the statutory definition of improvement, § 29–1–201(a)(iii)(B), underlined above, and adds it to the statutory definition of contractors. § 29–1–201(a)(i). Appellant's definition is misleading and improper. The fact that "improvement" is defined in the disjunctive, to include "work performed or material furnished" for the improvement of real property, does not relate to or affect the definitions of "contractor," "subcontractor," or "materialman."

■ The statutory language is plain and unambiguous. A "contractor" is a person "employed by and contracting with" an owner. § 29–1–201(a)(i)(A). A "materialman" is a person "other than a contractor * * * furnishing materials to an owner or contractor under contract." Appellant does not fit the statutory definition of a contractor here in that it was not "employed by" the owner, even if we assume it contracted with the owner.

In *American Buildings Company v. Wheelers Stores,* Wyo., 585 P.2d 845, 847 (1978), we said:

" * * * [W]hen a contract concerns the construction of improvements to real property, 'contractor' has a specialized meaning related to the building trades; and it is in this sense that 'contractor' is connected to the law of mechanics' liens, as is a 'subcontractor' and one who supplied materials. The latter has come to be known as a 'materialman'. Statutory terms must be construed in connection with the subject matter with which they are used. *Morrison-Knudson Co. v. State Board of Equalization,* 1943, 58 Wyo. 500, 135 P.2d 927.

* * * * * *

"The authority is overwhelming that one who merely furnishes materials to the owner or a contractor is a materialman, and not a contractor or subcontractor, within the meaning of the mechanics' lien laws. Anno., short-titled 'Mechanic's Lien—Who Is Materialman,' 141 A.L.R. 321. See also, A.L.R. Bluebooks of Later Decisions. As concluded by the same annotation, one who not only furnishes materials, but installs them, is a contractor or a subcontractor, and not a materialman, within the meaning of mechanics' lien laws. * * *"

Appellant distinguishes the case before us from the American Buildings Company case because the lien statute applicable in the case here included definitions while the lien statute applicable in that case did not. We do not believe the amendment overruled the American Buildings case. A supplier of materials cannot be converted into a contractor, as appellant has tried to do, by expanding the statutory definition of contractor.

We hold that appellant was a materialman and did not file its lien statement within the time provided by statute.

II

■ The judgment of the trial court can be affirmed for the additional reason that appellant did not give proper notice of a

lien to the owners of the property. We have held that a district court judgment may be affirmed on any legal ground appearing in the record. *Mentock v. Mentock*, Wyo., 638 P.2d 156 (1981); and *Skinner v. Skinner*, Wyo., 601 P.2d 543 (1979). Other issues were presented by appellees to the district court which could have been the basis of a summary judgment:

1) Did appellant give adequate pre-lien notice?

2) Was appellant's pre-lien notice defective because it did not state from whom the claim was due?

3) Are appellant's liens invalid because they were filed in the name of a non-existent company and suit to foreclose was brought in the name of a non-existent company?

Section 29–1–201(a)(v)(A) defines owner to include "any person with a legal or equitable interest in the property." Appellees Walters and Valaseks filed their deeds to the property on October 12 and 29, 1982. The notices of intent to file a lien were not sent to Baird until December 22 and December 30, 1982. Appellees Walters and Valaseks had legal title to the property about two months before notice was sent, and appellants are presumed to have knowledge of such from the recordings. Appellees Walters and Valaseks should have been included among those to whom the notice was sent. We so held in *Davis v. Big Horn Lumber Co.*, 14 Wyo. 517, 85 P. 980 (1906). Appellant distinguishes Davis and the case before us on the basis that the statute at the time of Davis required the lien to specify "the name of the owner or owners," whereas the present statute requires the lien statement to contain the "name and address of the person against whose property the lien is filed." This is a distinction without a difference. Obviously, the "name * * * of the person against whose property the lien was filed" in this case was the Walters in one instance and the Valaseks in the other. Any effort to turn this language into a direction to give the notice only to the owner of the property at the time of contract is contrary to the purpose of giving notice.

The statutory direction is clear:

"Before filing a lien pursuant to this chapter every person shall give ten (10) days notice to the *owner or his agent* in writing of any claim against a building or an improvement or for materials furnished stating the amount of any claim and from whom it is due." (Emphasis added.) Section 29–2–107.

The notice must go to the "owner or his agent." Common sense would make this so. In this case, for example, why should Baird care if a lien is placed on the property of appellees Walters or Valaseks. Appellees Walters and Valaseks do care. If they had timely notice of the lien, they might have been in a position to withhold some payments to Baird or otherwise assure payment by Baird. The fact that the owner may be other than the one owing the claim is recognized in § 29–1–301(b)(iii) and (v), wherein the lien statement is required to contain both the "name and address of the person against whose property the lien is filed" and the "name of the person against whom the lien claim is made."

■ The purpose of our recording statutes is to give constructive notice. They are designed to prevent fraud. *Cheyenne National Bank v. Citizens Savings Bank*, Wyo., 391 P.2d 933 (1964); *Torgeson v. Connelly*, Wyo., 348 P.2d 63 (1960); *Boswell v. First National Bank*, 16 Wyo. 161, 92 P. 624 (1907).

Inasmuch as appellant failed to comply with the requirement of the lien statute in not giving proper notice to the owners of the property, i.e., appellees Walters and Valaseks, the lien is ineffective. We can affirm the trial court in its summary judgment because 1) appellant was a materialman rather than a contractor and did not file notice of intent to file a lien within the time required by statute, and 2) proper notice of intent to file a lien was not given.

Affirmed.

ROSE, Justice, dissenting, with whom CARDINE, Justice, joins.

Under the plain and unambiguous language of our construction-lien statutes, §§ 29-1-201 through 29-2-109, W.S.1977, Union Manufacturing and Supply Company, Inc. (Union) qualified as a contractor and timely perfected its construction liens within the prescribed 120-day period. In addition, Union acted in accordance with every authority of which I am aware by sending pre-lien notices of its claims only to the property owner actually obligated on the construction contract. Therefore, I would have reversed the summary judgments entered in this case by the district court.

## CONTRACTOR OR MATERIALMAN

As discussed in the majority opinion, Union timely filed its lien statements with the county clerk only if it qualified as a contractor, entitled to the extended filing period afforded by § 29-2-106(a).[1] Our construction lien statutes precisely define "contractor" and related terms. Section 29-1-201(a), W.S.1977, provides:

"(a) Except as otherwise provided, as used in this title:

"(i) 'Contractor' means:

"(A) A person employed by and contracting with an owner to improve an owner's property * * *

\* \* \* \* \* \*

"(iii) 'Improve or improvement' means:

\* \* \* \* \* \*

"(B) Any work performed or material furnished for the permanent change of any real property; * * * "

To know whether a person is a contractor, it obviously is necessary to consult the statutory definition of "improve," since that term appears in the definition of "con-

tractor." I am at a loss to understand how the majority can hold that the statutory definition of "improve or improvement" does not relate to or affect the statutory definition of "contractor." The meaning of "contractor" *depends* upon the meaning of "improve."

According to the plain, unambiguous language of § 29-1-201(a)(i)(A) and (a)(iii)(B), a contractor is one who enters into an agreement with an owner to perform work *or* furnish material for the permanent change of the owner's real property. Where the legislature expresses its intent this clearly in the language of the statute, we must give effect to that intent. We collected our holdings with respect to this rule in *Board of County Commissioners of the County of Campbell v. Ridenour*, Wyo., 623 P.2d 1174, 1184, *reh. denied* 627 P.2d 163 (1981):

"The primary objective in ascertaining the meaning of a law is legislative intent; and, if such intent is expressed clearly and without ambiguity in the language of the statute, such intent must be given effect. Intent must be found in the language of the statute itself. *Oroz v. Hayes*, Wyo.1979, 598 P.2d 432, 434. Where the language of a statute is plain and unambiguous and conveys clear and definite meaning, there is no occasion for resorting to rules of statutory construction; and the court has no right to look for and impose another meaning. *Wyoming State Treasurer v. City of Casper*, Wyo.1976, 551 P.2d 687, 698. The plain, ordinary and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary. *State v. Stern*, Wyo.1974, 526 P.2d 344, 346. Courts will not enlarge, stretch, expand or extend a statute to matters not falling within its express provisions. *Lo Sasso v. Braun*, Wyo. 1963, 386 P.2d 630, 632. *Courts will not*

---

1. Section 29-2-106(a), W.S.1977, provides:

"(a) Every contractor shall file his lien statement within one hundred twenty (120) days and every other person shall file within ninety (90) days:

"(i) After the last day when work was performed or materials furnished under contract; or

"(ii) From the date the work was substantially completed or substantial completion of the contract to furnish materials, whichever is earlier; or

"(iii) With respect to an employee or subcontractor, after the last day he performed work at the direction of his employer or contractor."

*usurp the power of the legislature by deciding what should have been said. Barber v. State Highway Commission, 1959, 80 Wyo. 340, 342 P.2d 723."* (Emphasis added.)

Through precisely defined terms, the legislature has indicated its intent to include among contractors those persons who contract with the owner to furnish material for the permanent change of the owner's real property. The significant feature which distinguishes the contractor from the materialman (who also furnishes materials under contract, § 29–1–201(a)(vi) [2]) is the fact that the contractor deals directly with the property owner. Section 29–1–201(a)(i)(A).

Ignoring our well-established rules concerning the ascertainment of legislative intent, the majority turn to the judicial definitions of "contractor" and "materialman" developed in *American Buildings Company v. Wheelers Stores,* Wyo., 585 P.2d 845 (1978). We decided that case, however, under our previous construction-lien statutes, which included no definitions of the terms "contractor," "subcontractor" or "materialman." We attempted, therefore, to construe the statutory meaning of those terms according to their usage in the building trade. Since our present lien laws precisely define these crucial terms, we no longer need to resort to rules of statutory construction. *Board of County Commissioners of the County of Campbell v. Ridenour,* supra.

By amending the construction-lien statutes in 1981, the legislature rejected our definitions of "contractor" and "materialman" used in *American Buildings Company v. Wheelers Stores,* supra, and restored the law of construction liens announced by this court in *Jordan v. Natrona Lumber Co.,* 52 Wyo. 393, 75 P.2d 378, 113 A.L.R. 1377 (1938). Jordan presented a factual situation remarkably similar to the instant case. There, the lumber company, pursuant to a contract with the property owner's lessee, had furnished only building materials for the improvement of the property. Receiving no payment, the lumber company filed a claim of lien 114 days after delivering the last materials to the project. The owner argued that the lumber company did not qualify as an original contractor and, therefore, was required to file its lien statement within 90 days under § 66–508, W.R.S.1931,[3] the predecessor of § 29–2–106(a), supra n. 1. The court rejected that argument saying:

"It is said that the lumber company must be regarded as included within the words of the quoted statute, 'and every other person'; that one who supplies only material for a building cannot be regarded as an original contractor * * *. These contentions, also, we are obliged to say are without merit.

"In *Ambrose Mfg. Co. v. Gapen,* 22 Mo. App. 397, the court said:

" 'It is contended by appellants that the term original contractor, as used in the statute, has reference solely to those who may do service, by way of work, labor, or superintendence, upon the building.

" 'The point is not well taken. It has been specially ruled by our supreme court, that *a material man may be an original contractor, and that he is, in fact, such contractor, if he furnish the material on a contract with the owner.* Hearne v. Ry. Co., 53 Mo. 324.'

\*    \*    \*    \*    \*    \*

"The decision in the *Hearne* Case was rendered in 1873 and some time before our mechanics' lien law was adopted by the territorial Legislature. The principle

---

**2.** Section 29–1–201(a)(vi) provides:
"(vi) 'Subcontractor' or 'materialman' means a person other than a contractor performing work or furnishing materials to an owner or a contractor under contract * * *."

**3.** Section 66–508, W.R.S.1931, provided in part: "It shall be the duty of every original contractor, within four months, and every subcontractor, and every journeyman and day laborer and every other person seeking to obtain the benefits of the provisions of this article, within ninety days after the indebtedness shall have accrued, to file in the office of the register of deeds of the proper county, a just and true account of the demand due him, her, or them, after all just credits shall have been given, which is to be a lien upon such building or improvements * * *."

would seem applicable that a statute borrowed from the legislation of another state will be presumed to have been adopted with the construction placed upon it by the courts of that state. [Citations.]" (Emphasis added.) 75 P.2d at 384–385.

The definitions section of our current construction-lien law reflects the legislature's approval of the result in *Jordan*.

I would have held that one who furnishes materials for the permanent change of real property, under a contract with the owner of such property, is a contractor entitled to 120 days within which to perfect his lien under §§ 29–1–201(a) and 29–2–106(a). Accordingly, Union qualified as a contractor in furnishing construction materials under its agreement with the owner and timely filed its lien statements with the county clerk.

NOTICE OF INTENT TO FILE A LIEN

The majority deny appellant the right to enforce its construction liens on the additional ground that the notices of intent to file such liens were sent to the contracting property owner and not to the persons who owned the property at the time of notification. This holding places Wyoming squarely in opposition to every case on point of which I am aware. Furthermore, *Davis v. Big Horn Lumber Co.*, 14 Wyo. 517, 85 P. 980 (1906), the case cited by the majority as controlling, deals with recorded lien statements and has absolutely nothing to do with the notice of intent to file a lien at issue in the instant case.

Section 29–2–107, W.S.1977, requires a lien claimant to notify the property owner of a claim prior to the actual filing of a lien statement:

"*Notice of intention to file lien.*

"Before filing a lien pursuant to this chapter every person shall give ten (10) days notice to the owner or his agent in writing of any claim against a building or an improvement or for materials furnished stating the amount of any claim and from whom it is due."

This pre-lien notice serves to warn the owner obligated on the construction contract against paying the original contractor while outstanding claims exist in favor of laborers and materialmen, *Kirby Building Systems, Inc. v. Independence Partnership No. One*, Wyo., 634 P.2d 342, 346 (1981); *Jordan v. Natrona Lumber Co.*, supra, 75 P.2d at 386. In addition, the ten-day notice affords the owner an opportunity to discharge the debt and prevent the perfection of a lien against the property, *R.L. Sweet Lumber Company v. E.L. Lane, Inc.*, Mo., 513 S.W.2d 365, 76 A.L. R.3d 596, 603 (1974).

To accomplish these purposes, the notice of intent to file a lien must inform the owner of the property who entered into the construction contract, since only such owner has a contractual obligation to pay the claimant. Courts uniformly have held to this effect, as the A.L.R. Annotation, "Who is the 'owner' within mechanic's lien statute requiring notice of claim," 76 A.L.R.3d 605, 622–623, observes:

"Thus, in regard to a prelien notice, such as \* \* \* a notice of intention to claim a lien, it is held that notice is properly given and is required to be given to the owner at the time the contract was made, or the work commenced or the materials furnished; and notice to a subsequent owner particularly one who becomes such after the completion of the work or the furnishing of the materials for which the lien is claimed, is not required \* \*."

The annotation cites no cases which hold for the contrary position adopted by the majority.

The "general rule" has been distilled by Missouri appellate courts interpreting a pre-lien notice statute identical to ours in all aspects pertinent here:

" \* \* \* The general rule is that the notice must be given to the one who owned the property at the time the contract for the improvement was made. [Citations.] And it has been held that, if the property is conveyed while the improvement is in progress, a notice to the grantee is not necessary. [Citations.]" *P.M. Bruner Granitoid Co. v. Klein*, 100 Mo.App. 289, 73 S.W. 313 (1903).

The court in *Edward McLundie & Co. v. Mount*, 145 Mo.App. 660, 123 S.W. 966, 967 (1909), approved this rule even though the contracting owner no longer had an interest in the property which would require his joinder in the subsequent foreclosure action.

This general rule comports with the definition of "owner" set out in our construction-lien statutes. Section 29–1–201(a)(v)(A) provides:

"(v) 'Owner' as used in this act means:

"(A) With respect to construction liens: any person with a legal or equitable interest in the *property to be changed, altered or improved,* for whose use or benefit any *improvement shall be made* or any materials furnished; * * *" (Emphasis added.)

This statute contemplates that the owner is one who holds an interest in the property at the time that action is taken to improve the property.

The majority ask,

" * * * [W]hy should Baird [the contracting property owner] care if a lien is placed on the property of appellees Walters or Valaseks?"

Baird should care, obviously, because the perfection of the construction liens will place Baird in breach of the statutory covenants in its warranty deeds.[4] See *Bakken v. Price*, Wyo., 613 P.2d 1222, 1229–1230 (1980). The pre-lien notices gave Baird a final opportunity to pay the contractor and avoid the filing of the liens.

It is true that the *perfection* and *enforcement* of the liens affect the interests of the current property owners. However, their dilemma would not have been eased by the receipt of *pre-lien notices.* They had closed their transactions with Baird two full months before the pre-lien notices were sent. It is doubtful that they were in a position at that time to withhold payments to Baird, as the majority suggest. The current owners' remedies lie against Baird, as grantor by warranty deeds, *after* the lien statements have been recorded. While pre-lien notice to the current, as well as the contracting, owner would be courteous and desirable, a claimant should not be denied enforcement of his lien when, in compliance with universal authority, he has notified the entity against whom the claim for nonpayment is made.

I would have reversed the summary judgments entered by the district court and remanded this case for trial.

---

4. By virtue of its warranty deeds, Baird covenanted that the conveyed properties were free from encumbrances and that the grantees would enjoy quiet and peaceful possession of the premises. Section 34–2–103, W.S.1977, provides:

"Every deed in substance in the [standard warranty deed] form [§ 34–2–102], when otherwise duly executed, shall be deemed and held a conveyance in fee simple, to the grantee, his heirs and assigns, with covenants on the part of the grantor, (a) that at the time of the making and delivery of such deed he was lawfully seized of an indefeasible estate in fee simple in and to the premises therein described, and had good right and power to convey the same; (b) that the same were then free from all incumbrances; and (c) that he warrants to the grantee, his heirs and assigns, the quiet and peaceful possession of such premises, and will defend the title thereto against all persons who may lawfully claim the same. And such covenants shall be obligatory upon the grantor, his heirs and personal representatives, as fully, and with like effect as if written at length in such deed."