**RIVER CITY DRYWALL, INC.,
et al., Appellants,**

v.

**RALEIGH PROPERTIES, INC.,
et al., Respondents.**

**Nos. ED 94990, ED 94991.**

Missouri Court of Appeals,
Eastern District,
Division Three.

May 17, 2011.

Thomas G. Berndsen, Michael J. Rolwes, St. Louis, MO, for appellants.

Martin W. Blanchard, Michael C. Schroer, St. Louis, MO, for respondents.

LAWRENCE E. MOONEY, Judge.

In this mechanic's lien case, we are presented with the question of whether lien claimants performed their work as original contractors or whether they were subcontractors, such that they then had to provide the ten-day notice required under Section 429.100. The trial court held that the claimants were subcontractors. Consequently, because the claimants did not file the statutorily-required ten-day notice, the court ruled that the claimants were not entitled to the requested liens and therefore entered judgment against the claimants.

We reverse the trial court's judgment. We hold that the claimants contracted with the agent of the property owner. Therefore, the claimants are considered original contractors and, as such, they were not required to give notice under Section 429.100.

### Factual and Procedural Background

Ambassador Floor Company and River City Dry wall, Inc., the lien claimants in this consolidated appeal, each sought the imposition of a mechanic's lien against certain property located in a residential subdivision known as Hillington Estates. Both claimants sought a lien on Lot 10 in the subdivision. Ambassador additionally sought a lien against Lot 4. Ambassador's liens were for flooring and carpet that Ambassador had installed in the homes

that had been built on the lots. River City's lien was for the provision and installation of drywall materials. Ambassador and River City performed their work in 2007. At that time, Raleigh Development, LLC was the property owner of record. It had not always been so.

The Hillington Estates subdivision has its beginnings back in 2004. On July 29th of that year, a tract of real property on which the subdivision is now located was conveyed to Raleigh Properties, Inc. by a general warranty deed recorded on August 10, 2004. Four months later, on December 31, 2004, Raleigh Properties executed a quit-claim deed conveying the property to Raleigh Development, LLC, for and in consideration of one dollar. Three weeks later, on January 21, 2005, Raleigh Properties recorded a subdivision plat for the Hillington Estates Subdivision, thereby dividing the property into twenty-six separate lots that included Lots 4 and 10. Despite the previously-executed quit-claim deed, the plat identified Raleigh Properties, Inc. as the property owner.

Raleigh Properties and Raleigh Development were both owned and controlled by Richard Raleigh. He was the president and sole shareholder, director, officer, and employee of Raleigh Properties. He was a member and the sole employee of Raleigh Development. When asked at his deposition, Mr. Raleigh could not name any other members of Raleigh Development. The corporate address for both companies was Mr. Raleigh's personal residence. Mr. Raleigh was solely responsible for making all business and financial decisions for both companies.

Raleigh Development was set up by Mr. Raleigh's accountant for ownership of the land. The intent was for Raleigh Development to hold title to the lots, and for Raleigh Properties to be responsible for marketing, selling, and constructing homes on the lots. According to Mr. Raleigh, Raleigh Development was essentially no more than a holding company for Raleigh Properties. Mr. Raleigh admitted that when he made management and business decisions concerning the development of the Hillington Subdivision, he made no distinction between Raleigh Properties and Raleigh Development. He further admitted that he did not exercise due diligence in maintaining a separation between the two companies. The roles of the two companies were confused and interchanged. For instance, construction loans for the subdivision were taken out in the name of both companies. And Raleigh Properties paid all the taxes on the property, even though Raleigh Development was the owner of record.

According to Mr. Raleigh, Raleigh Properties was in possession and control of the lots, and asserted dominion over the lots at all times during the construction of the homes in the Hillington Estate subdivision. He further acknowledged that in practice, Raleigh Properties acted as and was treated as the owner of the lots with respect to construction activities. Despite what appeared on paper, Mr. Raleigh considered Raleigh Properties, in fact and in practice, to be the owner of the property.

Raleigh Properties was the entity that entered into sales contracts with the individual home buyers, even though Raleigh Development held title to the lots. There were no contracts between Raleigh Development and Raleigh Properties concerning the transfer of title for the lots upon completion of the homes. And Raleigh Properties paid no consideration and transferred no funds to Raleigh Development with respect to any of the homes that were sold. When a new home in the subdivision was completed and sold, the entire purchase price was paid to Raleigh Properties.

Raleigh Properties contracted with Ambassador in November of 2005 and October of 2007 to furnish flooring, labor, and materials for the new homes being constructed on Lots 4 and 10 in the Hillington Estates subdivision. When Raleigh Properties failed to pay the amounts due and owing under the contract, Ambassador filed its mechanic's liens against the two lots. Ambassador did not serve Raleigh Development, the property owner of record at the time Ambassador performed its work, with notice under Section 429.100 of its intent to file mechanic's liens.

Raleigh Properties contracted with River City in May of 2006 to supply drywall, labor, and materials for the home being constructed on Lot 10. Raleigh Properties also failed to pay the amounts due and owing under its contract with River City, prompting River City to file its mechanic's lien against the lot. As was the case with Ambassador, Raleigh Development was the property owner of record when River City performed its work. And like Ambassador, River City did not serve Raleigh Development with notice of its intent to file a mechanic's lien.

River City ultimately filed suit to enforce its lien. Ambassador intervened in River City's action and filed its suit to enforce its liens. The parties tried their action to the trial court on August 10, 2009, with Ambassador presenting its claims in the morning and River City presenting its claim in the afternoon.

The trial court entered judgment against the claimants denying their claims for the imposition of mechanic's liens. The court held that the claimants were subcontractors to Raleigh Properties, and as such they were required to serve Raleigh Development with the notice required under Section 429.100 but failed to do so. Noting that compliance with the notice-to-owner requirement is a condition precedent to

the creation of a lien, the trial court thus concluded that the claimants had each failed to meet their burden of proof to be entitled to a mechanic's lien. Therefore, the court ruled, Ambassador was not entitled to a lien for materials and/or services it provided on Lots 4 and 10, and River City was not entitled to a lien for materials and/or services it provided on Lot 10.

The claimants appeal, alleging the trial court erred in holding that they were subcontractors required to give ten-days notice under Section 429.100. The claimants maintain that the party with which they had contracted—Raleigh Properties—was the agent of the property owner of record, Raleigh Development. The claimants thus contend, that for purposes of complying with the mechanic's lien statutes, they are considered original contractors, not subcontractors, and as original contractors they were not required to serve the ten-day notice under Section 429.100.

### Standard of Review

■■■ In reviewing this court-tried mechanic's lien case, we will affirm the judgment of the trial court " 'unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.' " *Gauzy Excavating and Grading Co. v. Kersten Homes, Inc.*, 934 S.W.2d 303, 304 (Mo. banc 1996) (*quoting Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). Although we generally defer to the trial court's findings of fact, we review conclusions of law without deference to the trial court. *Missouri Land Development Specialties, LLC v. Concord Excavating Co., L.L.C*, 269 S.W.3d 489, 496 (Mo.App. E.D. 2008). Instead, we independently evaluate whether the trial court properly declared or applied the law. *Id.*

## Discussion

 As we engage in our review, we are mindful that the mechanic's lien law of Missouri is remedial in nature. *R.L. Sweet Lumber Co. v. E.L. Lane, Inc.*, 513 S.W.2d 365, 371 (Mo. banc 1974). The law "has an equitable purpose and the aim is to accomplish substantial justice." *Utley v. Wear*, 333 S.W.2d 787, 791 (Mo.App. 1960). The law is designed "to give security to mechanics and materialmen for labor and materials furnished in improving the owner's property." *Sweet Lumber*, 513 S.W.2d at 371. We should construe the law as favorable to those persons as its terms will permit. *Id.*

 Our mechanic's lien law, in general terms, affords the right to a mechanic's lien to any party that contracts with the owner or the owner's agent. Section 429.010.1.[1] The term "agent," as used in our mechanic's lien statutes, is interpreted broadly. *Ward v. Nolde*, 259 Mo. 285, 168 S.W. 596, 600 (1914). The level of authority required to create an agency relationship for purposes of the mechanic's lien statute is less than required in other contexts. *Id.* The agent need not have the same level of authority as would be required to bind the owner personally for payment of the labor or materials fur-

nished. *Id.* The purpose of our mechanic's lien law "is not to create a personal indebtness not otherwise existing." *Id.* at 599–600. Rather, it is "to provide a lien under the conditions enumerated." *Id.* at 600. As used in our mechanic's lien law, an "agent" may be "a person with such limited authority as to be unable to bind his principal personally for the work, but who at the same time, by an exercise of the limited authority given, will transmit to the person furnishing the materials a right to a lien upon the owner's premises." *Id.*

 A party who contracts with the owner's agent is considered to be an original contractor. *Morgan Wightman Supply Co. v. Smith*, 764 S.W.2d 485, 490 (Mo.App. E.D.1989). An original contractor is "[o]ne who makes a contract to perform labor or furnish materials with the then owner of the property ..." *Vasquez v. Village Center, Inc.*, 362 S.W.2d 588, 593 (Mo.1962). A subcontractor, on the other hand, is generally "[o]ne who contracts with the original contractor to perform part of the labor or furnish part of the material...." *Morgan Wightman Supply*, 764 S.W.2d at 489.

 The parties to this appeal vigorously dispute whether the claimants are original contractors or subcontractors. The distinction is critical to the question of

---

1. Section 429.010.1 reads, in part, with emphasis added:

1. Any person who shall do or perform any work or labor upon land, rent any machinery or equipment, or use any rental machinery or equipment, or furnish any material, fixtures, engine, boiler or machinery for any building, erection or improvements upon land, ... *under or by virtue of any contract with the owner or proprietor thereof, or his or her agent,* trustee, contractor or subcontractor, ... upon complying with the provisions of sections 429.010 to 429.340, shall have for his or her work or labor done, machinery or equipment rented or materials, fixtures, engine, boiler, machinery, ..., a lien upon such building,

erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated, to the extent of three acres; or if such building, erection or improvements be upon any lot of land in any town, city or village, or if such building, erection or improvements be for manufacturing, industrial or commercial purposes and not within any city, town or village, then such lien shall be upon such building, erection or improvements, and the lot, tract or parcel of land upon which the same are situated, and not limited to the extent of three acres, to secure the payment of such work or labor done, machinery or equipment rented, or materials, fixtures, engine, boiler, machinery, ... furnished....

notice. Our mechanic's lien law requires claimants to satisfy specific notice obligations to assert entitlement to a mechanic's lien. Proper notice is a condition precedent to the creation, existence, or validity of a mechanic's lien. *Bullmaster v. Krueger*, 151 S.W.3d 380, 385 (Mo.App. W.D. 2004). When a lien claimant fails to comply with the applicable notice provisions, the claimant is not entitled to a mechanic's lien on the property. *Financial Design Consultants, Inc. v. McCarver*, 712 S.W.2d 738, 740 (Mo.App. E.D.1986). An original contractor is required to provide the person with whom the contract was made, or the owner if there is no contract, a notice comprised of prescribed language at one of four enumerated times prior to receiving payment. Section 429.012.1.[2] A subcontractor, on the other hand, is required to serve the property owner with notice of its claim against the property ten days before filing its mechanic's lien.[3] Section 429.100.[4]

Guided by the above-detailed principles of law, and in light of the particular circumstances of this case, we hold that the claimants here contracted with the agent of the property owner Raleigh Development, and thus they should be considered as original contractors. Accordingly, because the claimants are original contractors, they were not required to give the ten-day notice required by Section 429.100 in order to be entitled to a mechanic's lien.

To restate all the evidence that compels our holding today would be unnecessarily repetitive. We conclude that Raleigh Properties was the agent of the owner Raleigh Development. Mr. Raleigh specifically acknowledged that although Raleigh Development was the owner of record, Raleigh Properties acted as and was treated as the owner of the lots with respect to the construction activities it performed. Raleigh Properties maintained control and asserted complete dominion over the lots

---

**2.** Section 429.012.1 reads, in part, with emphasis added:

> Every original contractor, who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler or machinery for any building, erection or improvements upon land, or for repairing the same, under or by virtue of any contract, ..., shall provide to the person with whom the contract is made or to the owner if there is no contract, prior to receiving payment in any form of any kind from such person, *(a) either at the time of the execution of the contract, (b) when the materials are delivered, (c) when the work is commenced, or (d) delivered with first invoice,* a written notice which shall include the following disclosure language in ten-point bold type:
>
> NOTICE TO OWNER
> FAILURE OF THIS CONTRACTOR TO PAY THOSE PERSONS SUPPLYING MATERIAL OR SERVICES TO COMPLETE THIS CONTRACT CAN RESULT IN THE FILING OF A MECHANIC'S LIEN ON THE PROPERTY WHICH IS THE SUBJECT OF THIS CONTRACT PURSUANT TO CHAPTER 429, RSMO. TO AVOID THIS RE-

SULT YOU MAY ASK THIS CONTRACTOR FOR "LIEN WAIVERS" FROM ALL PERSONS SUPPLYING MATERIAL OR SERVICES FOR THE WORK DESCRIBED IN THIS CONTRACT. FAILURE TO SECURE LIEN WAIVERS MAY RESULT IN YOUR PAYING FOR LABOR AND MATERIAL TWICE.

**3.** Notice is given to "the person who was the owner at the time the work was done or materials furnished." *BCI Corp. v. Charlebois Const. Co.*, 673 S.W.2d 774, 776 (Mo. banc 1984)(interpreting Section 429.100)

**4.** Section 429.100 reads in part:

> Every person except the original contractor, who may wish to avail himself of the benefit of the provisions of sections 429.010 to 429.340, shall give ten days' notice before the filing of the lien, as herein required, to the owner, owners or agent, or either of them, that he holds a claim against such building or improvement, setting forth the amount and from whom the same is due....

at all times during construction. Raleigh Properties engaged in, and was responsible for, a wide range of activities, from taking out loans and paying taxes, to hiring workers and constructing the homes, to marketing and selling the homes and retaining all of the sale proceeds. Thus, Raleigh Properties must also have possessed the authority to transmit to the claimants a right to a lien upon the property for the labor and materials the claimants furnished to the construction of those homes.

It is well-established that the purpose of the ten-day notice required by Section 429.100 is "to afford a property owner notice of outstanding claims of subcontractors so that he may withhold payment from his direct contractor and thus avoid double payment." *BCI Corp. v. Charlebois Const. Co.*, 673 S.W.2d 774, 781 (Mo. banc 1984). The notice is "for the benefit of the owner alone." *Sweet Lumber*, 513 S.W.2d at 370. Under our facts, notice of the claimants' intention to file a lien was unneeded to inform. Mr. Raleigh of outstanding claims. He was the owner of both companies, the sole employee of both companies, and the sole decision-maker for both companies. In short, he was a "one-man show." Mr. Raleigh made the contracts with the claimants and knew of the contractual obligations. A ten-day notice by the claimants would have served no purpose.

For the foregoing reasons, we reverse the trial court's judgment, and remand the cause to the trial court for further proceedings.

SHERRI B. SULLIVAN, P.J., and CLIFFORD H. AHRENS, J., concur.