**MISSOURI LAND DEVELOPMENT I, LLC., Appellant,**

v.

**RALEIGH DEVELOPMENT, LLC., et al., Respondents.**

No. ED 99258.

Missouri Court of Appeals, Eastern District, Division Three.

June 28, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 31, 2013.

Application for Transfer Denied Oct. 1, 2013.

**680**

Thomas G. Berndsen, St. Louis, MO, for appellant.

William L. Sauerwein, Stewart A. Schneider, Trenton K. Boyd, Joseph C. Blanner, St. Louis, MO, Shawn T. Briner, Jennifer A. Briner, Chesterfield, MO, for Respondents.

ROY L. RICHTER, Judge.

Missouri Land Development I, LLC ("Appellant") appeals from the trial court's judgment, entered by the Circuit Court of St. Louis County, quashing and permanently enjoining a writ of execution for the sheriff's sale of real property in satisfaction of a default civil money judgment entered on September 27, 2010, against Raleigh Properties, Inc. and Raleigh Development, LLC to enforce six mechanic's lien claims. We affirm.

## I. Background

The facts of this case are dense, and thus, a brief synopsis facilitates our legal analysis. The story begins with the purchase of empty ground in Eureka, St. Louis County, Missouri, in July 2004, by Raleigh Properties, Inc. ("Raleigh Properties"), on which a residential subdivision was planned. In December 2004, Raleigh Properties executed a quitclaim deed conveying the entire property to Raleigh Development, LLC ("Raleigh Development").

However, in January 2005, Raleigh Properties executed a subdivision plat creating Hillington Estates, consisting of 26 residential lots and common ground. The plat was recorded on January 21, 2005. On April 8, 2005, the previously executed quitclaim deed to Raleigh Development was recorded.

On October 20, 2005, Raleigh Properties recorded a boundary adjustment plat for Lot 16. Both plats were executed and recorded by Raleigh Properties, even though it had already conveyed the subdivision property to Raleigh Development. In 2006 and 2007, Raleigh Properties executed and recorded, as the grantor, general warranty deeds to convey Lots 3, 10, 16, 23, and 26 and the common ground in Hillington Estates subdivision to William and Jane Steck, David and Barbara Ploch, James and Renee Floyd, Anthony and Ann Amick, Dennis and Lisa Flick, and Hilltop Villages Community Association, Inc. (collectively, "Respondents").

In April 2008, River City Drywall Co., Inc. filed suit in the Circuit Court of St. Louis County seeking to enforce its mechanic's liens against various lots of the Hillington Estates subdivision. In June 2008, Missouri Land Development I, LLC ("Appellant"), a contractor hired by Raleigh Properties, Inc. and Raleigh Development, LLC (collectively, the "Raleigh Defendants") to do the grading, excavating, street and sewer work for the subdivision, intervened in the mechanic's lien lawsuit based on nonpayment for its work. In addition to Appellant's mechanic's lien claim against the Hillington Estates subdivision, the petition included a count for quantum meruit against the Hillington Estates subdivision and breach of contract against the Raleigh Defendants.

On May 14, 2010, the trial court entered a judgment denying the mechanic's lien claims of River City Drywall, Inc., and

another contractor, Ambassador Floor Co. on the basis that they failed to give the statutory ten-day mechanic's lien notice to Raleigh Development, which was the legal owner of the subdivision property. This judgment later was reversed on appeal in *River City Drywall, Inc. v. Raleigh Properties, Inc.*, 341 S.W.3d 716 (Mo.App. E.D. 2011).

Additionally, on March 23, 2010, the trial court entered judgment against Appellant and in favor of the Respondents, finding Appellant's mechanic's lien invalid because it did not comply with Missouri's mechanic's lien statutes. The trial court held that Appellant's mechanic's lien was not a valid and enforceable lien, Appellant was not entitled to a lien for its services on the Hillington Estates property, and the lien and all invoices and amounts therein were fully and forever released as a lien upon the property described in Appellant's petition, including the specific lots in which Respondents held or claimed an interest. Included in its findings of fact, the trial court found the following facts were not in dispute:

- Respondents are the owners or have an interest in the land subject to Appellant's mechanic's lien claims;

- Raleigh Development and Raleigh Properties are the former owners of all the lots that make up the property prior to conveying the lots to Respondents and others;

- Appellant and Raleigh Properties entered into a contract to perform excavation and grading work for the Hillington Estates project and a second contract for the installation of sewers, detention work and blasting for basements; and

- Appellant's lien claim relates to additional grading, excavation and sewer work not contemplated by the two contracts performed by Appellant.

In April 2010, Appellant requested the trial court reconsider and reverse summary judgment, or alternatively, to certify the March 23, 2010 judgment as final and appealable. The trial court granted the motion to certify the judgment for appeal. Appellant also dismissed with prejudice its claims for quantum meruit (count III) against Raleigh Development and the Hillington Estates subdivision homeowners and breach of contract (count IV) against Raleigh Properties and Raleigh Development. Appellant appealed from the judgment denying the mechanic's lien, and this Court affirmed the trial court's judgment in *Missouri Land Development I, LLC v. Raleigh Properties, Inc.*, 347 S.W.3d 172 (Mo.App. E.D.2011), pursuant to Rule 84.16(b).[1] In the meantime, however, while that appeal was pending, Appellant secured a default money judgment on September 27, 2010, against Raleigh Properties and Raleigh Development on Count II of its petition for mechanic's lien ("Money Judgment"). The Money Judgment stated that it was retroactive to, and effective as of March 23, 2010; and it was "separate from, and does not alter, amend or affect, the Findings of Fact, Conclusions of Law and Judgment as to [Appellant] that the Court entered on March 23, 2010."

Thereafter, on July 30, 2012, Appellant caused a writ of execution to be issued by the Circuit Court of St. Louis County against Raleigh Development, directing a sheriff's sale of Lots 3, 10, 16, 23, and 26 and the common ground in the Hillington Estates subdivision in satisfaction of the Money Judgment entered against Raleigh

1. Unless otherwise indicated, all rule references are to the Missouri Rules of Civil Procedure (2011).

Development. The sale was scheduled for September 6, 2012, and the legal and record owner of all the properties was Raleigh Development. On August 21, Appellant recorded a Notice of Lis Pendens with respect to this execution action, wherein the action was designed to affect the real estate of which the following parties have a claim or interest or is the owner of record: Raleigh Development, William P. Steck, Jane Christensen–Steck, David W. Ploch, Barbara A. Ploch, James M. Floyd, Renee C. Floyd, Anthony A. Amick, Ann M. Amick, Dennis Flick, Lisa Flick, and Hilltop Village Community Association.

Respondents intervened in this action contending that they were the true owners of the subject properties pursuant to the general warranty deeds, which they had received from Raleigh Properties in 2006 and 2007. Respondents filed two related but separate actions in the trial court, including applications for an immediate temporary restraining order to stop the pending sheriff's sale, and corresponding requests for preliminary and permanent injunctions. They also filed separate petitions under Section 513.360, RSMo (2011)[2], and Missouri Rule of Civil Procedure 76.25 to permanently quash the writ of execution and to enjoin Appellant from taking any future actions to execute against the properties. Respondents alleged they were the true owners of the subject properties because their original warranty deeds contained clerical errors and because the trial court had already ruled in its prior mechanic's lien judgments that Raleigh Development and Raleigh Properties were "former" owners of the subject properties and alter egos of each other. On August 29, 2012, the trial court sustained Respondents' requests and

entered a temporary restraining order enjoining the sheriff's sale.

Then, Respondents each recorded in the public records a "correction" deed to fix the clerical errors in their original warranty deeds by naming Raleigh Development as a new grantor in place of Raleigh Properties. Raleigh Development executed each of the deeds as the new grantor, and Respondents and Raleigh Properties also executed the deeds in confirmation of the same. Respondents then amended their pleadings to contend that these correction deeds vested ownership of the subject properties in them. They were all executed and recorded by the morning of September 6, 2012, prior to the scheduled sheriff's sale.

The final trial on the merits of Respondents' petitions to permanently quash the writ of execution was scheduled for October 2, 2012. Prior to trial, Appellant served subpoenas on each Respondent, scheduling their oral depositions and compelling production of the real estate and business records relating to their claims. Appellant also served each Respondent with a separate request under Rule 58.01, seeking production of the same of records. Appellant additionally served subpoenas on each Respondent compelling their appearances to testify at trial on October 2 and for the production of the same records. The trial court quashed all of this discovery.

At trial, Respondents entered evidence of the correction deeds as well as the judgments and appellate decisions entered in the two prior mechanic's liens cases describing Respondents as owners or having interest in the property and the Raleigh Defendants as the former owners of

---

**2.** All subsequent statutory citations are to RSMo Cum.Supp.2011, unless otherwise indicated.

the property. On October 16, 2012, the trial court entered its Order and Judgment sustaining Respondents' petitions, quashing the writ of execution and permanently enjoining Appellant from seeking execution against the subject properties. The trial court denied as moot Respondents' remaining applications for preliminary and permanent injunctive relief. In its Order, the court concluded that Respondents were the owners of their properties in fee simple at the time the Money Judgment was entered in favor of Appellant and against the Raleigh Defendants; the recording of the corrected warranty deeds cured any alleged title defects and precluded Appellant (the judgment holder) from executing on the real property owned by Respondents; and, because the Raleigh Defendants had no interest in the real property at the time the Money Judgment was entered, Appellant has no right to execute on the property.

Appellant filed this timely appeal on November 9, 2012.

## II. Discussion

Appellant raises four points on appeal. In its first point, Appellant alleges the trial court erred in quashing its writ of execution because the judgment was not supported by substantial evidence, was against the weight of the evidence, and because the trial court erroneously declared and applied the applicable law in that Respondents' correction deeds were invalid as a matter of law. Appellant argues the original warranty deeds were void and could not be reformed as a matter of law, and there was no evidence in the record of a pre-existing agreement between the parties, of a mutual mistake or that Respondents had any fee ownership or other equitable interest in the subject properties at the time Appellant's Money Judgment was entered against Raleigh Development or that Respondents' equities were superior to Appellant's equities.

Second, Appellant contends the trial court erred in admitting Respondents' correction deeds into evidence because the narrative portions of the deeds were inadmissible in that they constituted self-serving hearsay testimony which was not sworn to under oath and which deprived Appellant of its right to cross-examination.

Next, Appellant argues in its third point the trial court erred in quashing Appellant's writ of execution because the prior decisions in the underlying mechanic's lien cases were not controlling in this case in that there was no binding adjudication in Appellant's prior mechanic's lien case that Raleigh Development was a "former" owner of the subject properties and in that there was no adjudication in Appellant's prior mechanic's lien case or in the River City Drywall/Ambassador Floor Company mechanic's lien case that Raleigh Development was the alter ego of Raleigh Properties.

Fourth and finally, Appellant alleges the trial court abused its discretion in quashing Appellant's deposition and trial subpoenas directed to Respondents and in striking all of Appellant's written discovery requests because the testimony and documents sought were material and relevant to the contested issues at trial and doing so deprived Appellant of its fundamental rights of cross-examination and a fair trial.

### A. Standard of Review

We begin our discussion with an explanation of our standard of review. In a court-tried case, the judgment of the trial court will be sustained by an appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it errone-

ously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We review the evidence in the light most favorable to the judgment, making all reasonable inferences in favor of the judgment and ignoring contrary inferences. *Kiesling v. Andrews*, 273 S.W.3d 67, 70 (Mo.App. W.D.2008). The trial court was the trier of fact, and we defer to its factual findings as well as its determinations of witness credibility. *8000 Maryland, LLC v. Huntleigh Fin. Servs. Inc.*, 292 S.W.3d 439, 445 (Mo.App. E.D.2009).

Additionally, the trial court has broad discretion in controlling and managing discovery. *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 322 (Mo.App. E.D.2010). We will not disturb the trial court's ruling regarding discovery unless the ruling was clearly against the logic of the circumstances then before the court and so arbitrary and unreasonable as to shock the sense of justice and to indicate a lack of careful consideration. *Id.*

### B. Analysis

#### 1. Jurisdiction

 Before reaching the merits of this appeal, this Court must determine the preliminary matter of jurisdiction, which may be dispositive of this appeal. Respondents argue that the trial court's September 27, 2010 judgment is void because the entire count II of Appellant's petition was certified as final for appeal, and thus, the trial court lost jurisdiction to act on Appellant's claim against the Raleigh Defendants for money damages. Upon review, we disagree.

 The general rule for final and appealable judgments is that an appeal cuts off trial court jurisdiction to exercise any judicial function in the case and vests the jurisdiction in the appellate court. *Top Craft Inc. v. Int'l Collection Servs.*, 258 S.W.3d 488, 490 (Mo.App. S.D.2008). "The general rule against simultaneous trial/appellate court jurisdiction exists for good reason—we need not even begin to list illustrations why the alternative would be practically unworkable." *Id.* The filing of the notice of appeal suspends exercise of the trial court's judicial function, other than the court's jurisdiction over records or of the authority to exercise ministerial or executive functions prior to the filing of the transcript on appeal. *State v. Folson*, 940 S.W.2d 526, 527 (Mo.App. W.D.1997); *State ex rel. Brooks Erection & Const. Co. v. Gaertner*, 639 S.W.2d 848, 850 (Mo.App. E.D.1982); *Gieselmann v. Stegeman*, 470 S.W.2d 522, 523 (Mo.1971); *Herrick Motor Co. v. Fischer Oldsmobile Co.*, 421 S.W.2d 58, 62 (Mo.App.1967). "Following divesture, any attempt by the trial court to continue to exhibit authority over the case, whether by amending the judgment or entering subsequent judgments, is void." *McLean v. First Horizon Home Loan, Corp.*, 369 S.W.3d 794, 800 (Mo.App. W.D. 2012).

 However, "[i]f an intended judgment does not dispose of all issues and all parties in the case or does not form a final disposition of the matter it is not a final, appealable judgment...." *Spicer v. Donald N. Spicer Revocable Living Trust*, 336 S.W.3d 466, 469 (Mo. banc 2011). Under Rule 74.01(b), so long as at least one claim is fully resolved, the trial court has discretion to declare its judgment final upon a finding of "no just reason for delay." *First Cmty. Credit Union v. Levison*, 395 S.W.3d 571, 580–81 (Mo.App. E.D.2013). The trial court, "in exercising this discretion, is granted broad latitude to act as a 'dispatcher' of the case." *Id.* (quoting *Comm. for Educ. Equal. v. State*, 878 S.W.2d 446, 453 (Mo. banc 1994)). An appellate court should not disturb the trial court's Rule 74.01 determination unless the

trial court's conclusion was "clearly unreasonable." *Magna Bank of Madison Cnty. v. W.P. Foods, Inc.*, 926 S.W.2d 157, 161 (Mo.App. E.D.1996). The appellate court applies a four-factor test to determine whether the trial court's Rule 74.01(b) certification was proper:

1) whether the action remains pending in the trial court as to all parties;
2) whether similar relief can be awarded in each separate count;
3) whether determination of the claims pending in the trial court would moot the claim being appealed; and
4) whether the factual underpinnings of all the claims are intertwined.

*State ex rel. Bannister v. Goldman*, 265 S.W.3d 280, 286 n. 1 (Mo.App. E.D.2008).

Here, the record does not support a finding that the trial court abused its discretion in certifying as appealable the March 23, 2010 judgment against Appellant and in favor of Respondents, denying a mechanic's lien based on technical reasons, because such claim was fully resolved. Although this claim against Respondents and the contract/Money Judgment claim against the Raleigh Defendants both were included in Appellant's Count II labeled "mechanic's lien," Appellant was seeking separate relief against separate parties. The mechanic's lien determination did not moot the contract/Money Judgment claim, and the facts regarding the Raleigh Defendants were separate from those involving the Respondent homeowners. In further support for finding separation between the two claims, the March 23, 2010 judgment did not in any fashion rule on the contract or Money Judgment claim against Raleigh Properties or Raleigh Development, nor does the docket sheet show that the judgment pertains to the Raleigh Defendants. The September 27, 2010 Money Judgment specifically notes the judgment's separateness from the March 23, 2010 judgment. Moreover, the summary judgment motions filed by Respondents and Appellant and leading up to the March 23, 2010 judgment noted that they were asking the trial court for a ruling only upon the issue of the technical validity of a mechanic's lien pursuant to Section 429.080.

■ The record supports the trial court's Rule 74.01(b) certification, which led to this court affirming the judgment denying a mechanic's lien, but allowed the trial court's judicial functions over the case, i.e. Appellant's contract/Money Judgment claim against the Raleigh Defendants, to continue. Accordingly, the trial court's September 27, 2010 Money Judgment did not exceed the trial court's jurisdiction to act and the judgment is not void.

### 2. Discovery requests

■ We next move to a discussion of Appellant's fourth point on appeal, which pertains to pre-trial discovery. Appellant argues the trial court abused its discretion in quashing its deposition and trial subpoenas and in striking Appellant's written discovery requests because the discovery sought was material and relevant to the contested issues at trial, and doing so deprived Appellant of its fundamental rights of cross-examination and a fair trial. We disagree.

Generally, parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action, whether it relates to the claim or the defense of the party seeking discovery or to the claim or the defense of any other party, as long as the intended discovery appears to be reasonably calculated to lead to the discovery of admissible evidence. Rule 56.01(b)(1).

Respondents argue, however, that the writ of execution was governed by Rule 76.28, which facilitates the enforcement, via collection, of validly issued judgments, codifying the Missouri Supreme Court's decision in *State ex rel. Rowland Group v. Koehr*, 831 S.W.2d 930 (Mo. banc 1992) (holding that the circuit court had authority to issue subpoenas to produce documents in judgment debtor examination proceeding). This rule limits the scope of post-judgment discovery of assets to "matters, not privileged, that are relevant to the discovery of assets, including insurance, or income subject to execution or garnishment for the satisfaction of judgments." Rule 76.28.

In this action to quash and permanently enjoin the writ of execution for the sheriff's sale of real property in satisfaction of a default civil money judgment entered against the Raleigh Defendants, Raleigh Properties and Raleigh Development are the judgment debtors. Thus, assets, insurance, or income of Respondents are not the subject of the execution or garnishment. Appellant's attempt to discover such items from Respondents is beyond the scope of Rule 76.28 and irrelevant to Appellant's ability to collect its judgment from the Raleigh Defendants. It is clear that the trial court carefully considered the issues here and concluded that Appellant's subpoenas did not seek information that would aid in execution of its judgment. Because the trial court's ruling does not appear arbitrary or unreasonable, nor was it clearly against the logic of the circumstances, we will not disturb its ruling quashing Appellant's discovery requests sent to individual Respondents. Point IV is denied.

### 3. *Correction Deeds*

Next we turn to Appellant's contentions regarding Respondents' correction deeds as they relate to the trial court's judgment quashing Appellant's writ of execution. In its first point, Appellant alleges the trial court erred because Respondents' correction deeds were invalid as a matter of law, that the original warranty deeds could not be reformed as a matter of law, and there was no evidence in the record of a pre-existing agreement between the parties, of a mutual mistake or that Respondents had any fee ownership or other equitable interest in the subject properties at the time Appellant's Money Judgment was entered against the Raleigh Defendants. In its second point, Appellant contends the trial court erred in admitting Respondents' correction deeds into evidence because the narrative portions of the deeds were inadmissible in that they constituted self-serving hearsay testimony, which was not sworn to under oath and which deprived Appellant of its right to cross-examination.

#### a. *Original warranty deeds to Respondents are not void*

In its judgment, the trial court explains why Raleigh Development should not be considered the true owner of the properties so the properties cannot be subject to an execution sale to satisfy Appellant's judgment. First, the trial court ruled that the correction deeds, recorded by Respondents on September 5 and 6, 2012, cured any title defects arising out of the original warranty deeds. The trial court relied on several cases applying the rule that a purchaser of property who fails to record his deed until after a judgment has been entered against his grantor but who records it prior to the actual sheriff's sale under a writ of execution, trumps the interests of the intervening judgment creditor. *Givens v. Burton*, 183 S.W. 617, 622 (Mo.1916); *Davis v. Owenby*, 14 Mo. 170, 1851 WL 4149 (1851). Further, finding the judgment debtors, Raleigh Development and Raleigh Properties, had no inter-

est in the real property at the time the judgment was entered, the trial court concluded Appellant had no right to execute on the property. The court concluded, "A judgment creditor has no right to execute on property if it had no interest in the property at the time the deed was recorded and if the judgment creditor had no interest in the property at the time of execution." *Max Stovall v. Villager Homes*, 754 S.W.2d 5, 10 (Mo.App. E.D. 1988); *Shaw v. Padley*, 64 Mo. 519 (Mo. banc 1877) (holding that a mortgage which, although not recorded before the rendition of a judgment, but was recorded before any execution issued on such judgment, enjoyed priority over the judgment); *Hope v. Blair*, 105 Mo. 85, 16 S.W. 595, 597 (1891) (until a sale has been made under an attachment (execution), the lien acquired thereunder is subject to all prior unrecorded deeds and equities existing against the land).

The Missouri Supreme Court explained in *Church v. Combs*, when a deed may be corrected by a subsequent instrument: "Where there is no fraud and the rights of third parties have not intervened, and equity could have reformed the deed, it may be amended by a subsequent instrument so as to effectuate the intention of the parties." 332 Mo. 334, 58 S.W.2d 467, 470 (1933) (quoting 18 C.J. 217). We find such case instructive.

Here, there are no allegations of fraud. Next, in reviewing whether the rights of third parties have intervened, we find that despite Appellant having obtained a judgment lien that binds the estate of the defendants (Raleigh Defendants) against any subsequent act of theirs, Appellant acquires no interest in the property. *See Davis v. Owenby*, 14 Mo. 170, 1851 WL 4149, at *6. Thus, no third parties' intervening rights could defeat a corrective deed.

Finally, we look at whether a court of equity could have reformed the deed. To sustain a claim for reformation of a deed due to an alleged clerical error, the party seeking reformation must show: (1) a pre-existing agreement between the parties which is consistent with the change sought; (2) a scrivener's mistake in drafting the deed such that it was prepared other than as agreed; and (3) the mistake was mutual as between the grantors and the grantees. *Ethridge v. Tier-One Bank*, 226 S.W.3d 127, 132 (Mo. banc 2007); *Cardinal Partners, LLC v. Desco Inv. Co., LLC*, 301 S.W.3d 104, 110 (Mo. App. E.D.2010). First, in demonstrating a pre-existing agreement between the parties consistent with the change sought, it is sufficient to show that the parties agreed to accomplish a particular object and that the instrument was insufficient to effectuate that intent. *Lunceford v. Houghtlin*, 326 S.W.3d 53, 65 (Mo.App. W.D.2010). Even circumstantial evidence can establish such agreement, provided that natural and reasonable inferences drawn from such evidence clearly and decidedly prove the alleged mistake. *Id.* Here, the evidence establishes that Raleigh Properties was both an agent and an alter ego of Raleigh Development. Although the original warranty deeds were made by either the agent or alter ego, Raleigh Properties, they bound its principal, Raleigh Development. *See Ingram v. Lupo*, 726 S.W.2d 791 (Mo.App. E.D.1987). The court could disregard the corporate form and separateness of the legal entities. *Edward D. Gevers Heating & Air Conditioning Co. v. R. Webbe Corp.*, 885 S.W.2d 771, 773 (Mo.App. E.D.1994). Additionally, based on the evidence that Respondent-homeowners paid value for their properties and lived in those homes, the natural and reasonable inference is that title was properly passed to those Respon-

dents through the original warranty deeds. Accordingly, the original warranty deeds contained a mistake, listing Raleigh Properties instead of Raleigh Development as the grantor. The corrected deeds outline the mistake, explaining that their purpose is to conform to the original intent of the parties. Third and finally, the mistake is mutual, as evidenced by the correction deeds' executions by all the parties involved—Respondents, Raleigh Properties as grantor of the original warranty deeds, and Raleigh Development as intended grantor which had been omitted.

Here on appeal, Appellant argues the correction deeds must be executed by the same grantor to the original warranty deeds, so they relate back to the date of the original warranty deeds, citing cases from other jurisdictions. As explained above, the correction deeds were executed by the same grantor as the original warranty deeds, Raleigh Properties, and additionally, by Raleigh Development, which grantor had been omitted from the original general warranty deeds. The corrected deeds were signed by Richard Raleigh, member of Raleigh Development and president of Raleigh Properties. Additionally, each of the grantees, Respondents, signed the corrected deeds. Further, correction deeds relate back to the original deeds as they prevent a third party with knowledge of an error from taking advantage of it. *Thornton v. Miskimmon*, 48 Mo. 219 (1871). Appellant's argument here fails.

Appellant also argues the original warranty deeds cannot be reformed because equity will not reform a void deed because the deed never existed and reforming it would be tantamount to making a new contract between new parties. Appellant's argument is unsupported by Missouri law. In *Martin v. Nixon*, 92 Mo. 26, 4 S.W. 503, 505 (1887) (correction deed cured defects of grantor's failure to execute deed that

was recorded), *Boland v. Kirkwood Trust Co.*, 220 Mo.App. 1219, 298 S.W. 1052, 1053 (1927) (correction deed cured defect of incorrectly named grantees), and *Givens*, 183 S.W. at 621–22 (correction deed cured defect of improperly identified land subject to deed), the original deeds in those cases contained defects that could have rendered them void, but Missouri courts allowed correction deeds to cure the defects. Appellant's argument fails.

Point I is denied.

### b. Trial court did not abuse its discretion in admitting correction deeds

■ Appellant's second point argues the trial court abused its discretion in admitting Respondent's corrected warranty deeds into evidence as hearsay testimony. Appellant contends the one-sentence narrative portions of the correction deeds were conclusory, self-serving, unsworn, uncorroborated, and not subject to cross-examination, thus, they were not clear, cogent and convincing evidence necessary to prove Respondents' case. Respondents argue the recitals in the corrected deeds were made by all the parties and were included to explain, illustrate and show the motive for creating and recording the corrected deeds. The following statements were included in each of the correction deeds:

This Corrected General Warranty Deed is delivered to express (and conform to) the original intention of the parties in delivering the General Warranty Deed dated ____ and recorded ____ in Book ____ Page ____ [____] which deed contained a clerical error resulting in Raleigh Properties, Inc. being identified as the grantor and the omission of Raleigh Development, LLC as grantor. The warranties made at the time of the origi-

nal General Warranty Deed remain in full force and effect.

Missouri law provides, "[e]very instrument in writing, conveying or affecting real estate, which shall be acknowledged or proved, and certified as herein prescribed, may, together with the certificate of acknowledgment or proof, and relinquishment, be read in evidence, without further proof." Section 490.410.

 A recital specifying the purpose of the correction deed and identifying the deed being corrected with as much detail as possible should be included in any correction deed. 1 Mo. Prac, Methods of Prac: Transact. Guide § 5.13 "The correction deed." Moreover, the admission of evidence claimed to be hearsay is not reversible error unless it prejudices the complaining party. *Dunn v. St. Louis–San Francisco Ry. Co.,* 621 S.W.2d 245, 252 (Mo.1981). The complaining party cannot be prejudiced by the allegedly inadmissible evidence if the challenged evidence is merely cumulative to other admitted evidence of like tenor. *Id.* A court may take judicial notice of its own records and may take judicial notice of the records of other cases when justice so requires. *Vogt v. Emmons,* 158 S.W.3d 243, 247 (Mo.App. E.D.2005).

Here, in addition to the statute allowing for a correction deed, the record contains other competent evidence sufficient to support the trial court's judgment. Specifically, Appellant's Statement of Uncontroverted Material Facts in Support of its Motion for Summary Judgment on its Mechanic's Lien Claim provides that the Raleigh Defendants were the alter egos of one another, and that the conveyance of the entire tract from Raleigh Properties to Raleigh Development in 2004 was "of no legal significance to this case." The trial court here took judicial notice of the mechanic's lien case, and thus, Appellant's admission was in evidence. Additionally, in its March 23, 2010 judgment, the trial court found that Respondents are the current owners and the Raleigh Defendants were the "former owners" of the property at issue. Finally, in the appeal from the judgment of the underlying case, this Court held that Raleigh Properties was the agent of the owner Raleigh Development. *River City Drywall, Inc. v. Raleigh Props.,* 341 S.W.3d at 722.

Given the record before us, we find the trial court did not err in admitting the correction deeds into evidence. Appellant's second point is denied.

### 4. Prior court decisions are binding

 Last but not least, we address Appellant's third point, arguing that the trial court erred in quashing the writ of execution because the prior decisions in the underlying mechanic's lien cases were not controlling in this case regarding Raleigh Development as the "former" owner of the subject properties and Raleigh Development as the alter ego of Raleigh Properties. Appellant argues that because findings of fact are in no way binding, the trial court's Order and Judgment quashing execution of the sheriff's sale based on a sentence from the March 23, 2010 judgment's findings of fact that the Raleigh Development was the former owner of the properties does not constitute a binding adjudication that Raleigh Development was not the owner of the subject properties at the time Appellant's judgment was entered. Appellant further contends the decision affirming the March 23, 2010 judgment did not affirm the finding of fact that Raleigh Development was a "former" owner of the properties, but merely recited that finding and affirmed the judgment on the grounds that Appellant was not entitled to a single mechanic's lien claim against the subdivision.

While Appellant argues that the doctrine of the law of the case does not apply, it ignores the fact that the mechanic's lien action against Respondents was indeed filed in the same case as well as the same count (Count II) as that in which the trial court awarded the Money Judgment in favor of Appellant and against the Raleigh Defendants. Moreover, in that mechanic's lien claim, Appellant argued it had a valid mechanic's lien on various properties in the Hillington Estates subdivision, and that Raleigh Development's interest in the subdivision properties was of no legal consequence because the Raleigh entities admitted they were alter egos of each other. This Court found that the recipients of the deeds from the Raleigh entities were the actual owners of the properties and Raleigh Development was the former owner, denying the mechanic's lien. Now, in this action wherein Appellant is attempting to execute on a sheriff's sale that has been quashed by the court, Appellant changes course and argues that the two entities are not the same, such that Respondents never legally obtained the properties at issue.

■■■■■ "The doctrine of the law of the case" provides that a previous holding in a case constitutes the law of the case and precludes relitigation of the issue on remand and subsequent appeal. *Walton v. City of Berkeley*, 223 S.W.3d 126, 128–29 (Mo. banc 2007). The doctrine governs successive adjudications involving the same issues and facts, and applies appellate decisions to later proceedings in that case. *Am. Eagle Waste Indus., LLC v. St. Louis Cnty.*, 379 S.W.3d 813, 825 (Mo. banc 2012). Generally, the decision of a court is the law of the case for all points presented and decided, as well as for matters that arose prior to the first adjudication and might have been raised but were not. *Walton*, 223 S.W.3d at 129. It insures uniformity of decisions, protects the

parties' expectations, and promotes judicial economy. *Id.* The doctrine of the law of the case is a rule of policy and convenience; a concept that involves discretion. *Id.* at 130. The rule may not apply where the issues or evidence on remand are substantially different from those vital to the first adjudication and judgment. *Id.*

■■■■■ Furthermore, judicial estoppel applies in Missouri to prevent litigants from taking a position in one judicial proceeding, thereby obtaining benefits from that position in that instance, and later, in a second proceeding, taking a contrary position in order to obtain benefits from such a contrary position at that time. *Loth v. Union Pac. R.R. Co.*, 354 S.W.3d 635, 636 n. 4 (Mo.App. E.D.2011), (citing *Vinson v. Vinson*, 243 S.W.3d 418, 422 (Mo.App. E.D.2007)). In *Vinson*, this Court set out three factors to determine whether judicial estoppel applies: 1) a party's later position must be clearly inconsistent with its earlier position; 2) whether the party has succeeded in persuading a court to accept that party's earlier position; and 3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* (citing *Zedner v. U.S.*, 547 U.S. 489, 504, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006)).

Here, Appellant argues the issue before the trial court in the underlying mechanic's lien case was whether Appellant was entitled to a blanket mechanic's lien against the entire Hillington Estates subdivision, not the issues of whether the original warranty deeds were valid or contained clerical errors. Appellant further contends the decision affirming the March 23, 2010 judgment was not affirming the finding of fact that Raleigh Development was a "former" owner of the properties, but merely recited that finding and affirmed the judg-

ment on the grounds that Appellant was not entitled to a single mechanic's lien claim against the subdivision. We disagree.

We find Appellant here is requesting this Court alter its previous findings as well as the trial court's findings that Raleigh Development is the former owner of the properties and the recipients of the deeds from the Raleigh entities are the current owners of the properties. Appellant argued not only that the Raleigh entities are the former owners in the underlying mechanic's lien case, but also that the Raleigh entities were one in the same, or alter egos of each other. The courts agreed. As the deeds were sufficient to convey title to the lot owners, the deed received by the Hilltop Association was also sufficient to convey title to the common ground.

Further, under the factors to determine whether judicial estoppel applies, we find 1) Appellant's position now that the original warranty deed is void and the lot owners are not the true owners of the property is clearly inconsistent with its earlier position that the lot owners are the current owners and took interest through a valid warranty deed; 2) Appellant succeeded in having the trial court as well as this Court accept its earlier position that Respondents owned or had an interest in the property and that the Raleigh entities were the former owners of the property; and 3) Appellant would derive an unfair advantage over, and impose an unfair disadvantage on Respondents, who were legally adjudicated as owners of or having an interest in their properties and not subject to Appellant's mechanic's lien.

Accordingly, the law of the case as it was ruled upon in the mechanic's lien claim against Respondents stands and Appellant is judicially estopped from changing its position here from that position it argued

in earlier proceedings. Thus, the trial court did not err in making findings and conclusions consistent with Appellant's prior cases, thus, quashing Appellant's writ of execution. Appellant's third point is denied.

## III. Conclusion

The judgment of the trial court is affirmed.

ROBERT G. DOWD, JR., P.J., and ANGELA T. QUIGLESS, J., concur.